Exhibit 26-E

# Section 10.0

## National Environmental Policy Act

## 10.0 - NEPA

## SCOPE OF AUDIT

1. Overview of NEPA issues
2. Management Structure
   a. Overall organization
   b. Training
   c. Record keeping
3. NEPA compliance planning
4. NEPA/CERCLA and NEPA/RCRA integration
5. Determination of level of NEPA review required
6. Procedural aspects of NEPA documents
7. Technical content of NEPA documents

# NEPA FINDINGS

## AUDIT FINDINGS:

| | |
|---|---|
| NEPA/AF-1 | Improper Use of Memos-to-File and Improper Reliance on the Site-Wide Environmental Impact Statement |
| NEPA/AF-2 | Absence of NEPA Determination for the Plutonium Recovery Option Verification Exercise |
| NEPA/AF-3 | Adequacy of the Rocky Flats Plant Site-Wide Environmental Impact Statement |
| NEPA/AF-4 | Inadequate Integration of NEPA/CERCLA Documentation |
| NEPA/AF-5 | Inadequate or Inappropriate Use Of Section D of DOE's NEPA Guidelines |
| NEPA/AF-6 | Improper Forwarding of Memos-To-File to Headquarters |

## BEST MANAGEMENT PRACTICES:

| | |
|---|---|
| NEPA/BMP-1 | Lack of Coordinated Site-Wide Strategy to Ensure Compliance with the National Environmental Policy Act |
| NEPA/BMP-2 | Lack of NEPA/CERCLA Integration for the 881 Hillside Remedial Action |
| NEPA/BMP-3 | Need to Expedite NEPA Determinations for the 903 Pad, Mound, and East Trenches Hazardous Wastes Burial Sites Remedial Actions and Priority Remedial Actions |

## NOTEWORTHY PRACTICES:

| | |
|---|---|
| NEPA/NP-1 | Rockwell NEPA Compliance Committee |



SUBPOENA 1963RF EGG ITEM 15 5140834

**Audit Discipline** National Environmental Policy Act (NEPA)

**Audit Finding Number** NEPA/AF-1

**Audit Finding Title** Improper Use of Memos-to-File and Improper Reliance on the Site-Wide Environmental Impact Statement

**Audit Finding and Applicable Reference**

A Supercompactor and Repackaging Facility (SRF) is proposed to be constructed and operated at the Rocky Flats Plant in support of Defense Program's overall waste minimization efforts. The significance of potential environmental impacts associated with the project have not been adequately addressed in accordance with the requirements of the National Environmental Policy Act (NEPA).

It is estimated that the facility will process 50,000 cubic feet of mixed transuranic waste each year, which is proposed to be shipped to the Waste Isolation Pilot Plant (WIPP). The waste would include combustibles, used High Efficiency Particulate Air filters, and miscellaneous metal and glass. A space has been identified in Building 776 to house the SRF. A cement base has been poured and components of the supercompactor have been ordered from a vendor.

On April 4, 1989, DOE Albuquerque Operations Office issued a Memorandum-to-File (MTF), based on their review of an Action Description Memorandum (ADM) describing the construction and operation of the SRF, which concluded that the potential environmental impacts associated with the SRF were "clearly insignificant" and required no further NEPA documentation. The NEPA Audit Team reviewed the SRF ADM and determined that it was not immediately clear that the SRF operations would result in no significant environmental impacts, e.g., questions remain regarding the potential occurrence of a criticality accident. Use of the MTF is therefore inappropriate, as is reliance on existing NEPA documentation, since operation of the SRF is not addressed in the Rocky Flats Plant Site Environmental Impact Statement (DOE/EIS-0064, 1980).

**Applicable Citation and Requirements**

DOE Order 5440.1C (6.c.3), DOE NEPA Guidelines Section A.3.c.1, and the NEPA Guidance memorandum regarding use of Memos-to-File dated March 25, 1988, state that the MTF is "intended for use only in those circumstances where it is immediately clear that a proposed action will have no significant environmental impacts."

The SRF proposed action does not fit into a category of actions listed in Section D of the DOE NEPA Guidelines (52 FR 47668-47670, December 15, 1987).

**Recommendations**

Based on a review of the ADM for the SRF, and in accordance with the Section A.3(c)(2) of the DOE NEPA Guidelines, an Environmental Assessment (EA) should be prepared for the proposed construction and operation of the SRF. RFO should contact the Office of NEPA Project Assistance to discuss the scope of the EA, including the required level of impact analysis and the possibility of summarizing and referencing sections of the Safety Analysis Report for Building 776, if the analyses are both pertinent and current. Finally,



SUBPOENA 105 SEE ITEM 15

the EA should consider whether supercompaction would foreclose other waste treatment alternatives, particularly those relevant to current and potential waste acceptance criteria for the WIPP.



SUBPOENA 1063RF EGG ITEM 15 5140837

Case 1:91-cv-01362-CFL Document 195-14 Filed 07/27/2006 Page 7 of 22

**Audit Discipline** National Environmental Policy Act

**Audit Finding Number** NEPA/AF-2

**Audit Finding Title** Absence of a NEPA Determination for the Plutonium Recovery Verification Option Exercise

**Audit Finding and Applicable Reference**

No record of a NEPA determination could be found for the Plutonium Recovery Option Verification Exercise (PROVE) in a review of the Rocky Flats Plant NEPA records. The PROVE facility in Building 371 is 90% complete at a cost of approximately $60 million. The facility will use full scale plutonium recovery processing equipment to recover low plutonium content ash from the incinerator in Building 771.

It is unclear to the NEPA audit team to what extent the PROVE facility constitutes either a continuation of an activity described in the Rocky Flats Plant Site Environmental Impact Statement (DOE/EIS-0064, 1980) or represents an action that is connected to the proposed Plutonium Recovery Modification Project (PRMP), which, like PROVE, will recover plutonium from residue materials in Building 371. A NEPA determination should have been made for the PROVE facility preferably prior to initiation of detailed design but in any case prior to beginning construction.

**Applicable Citation and Requirements**

The Council on Environmental Quality (CEQ) regulations (40 CFR 1501.2) and Section A.1. of the DOE NEPA Guidelines require that the DOE integrate the NEPA process at the earliest possible time to insure that planning and decisions reflect environmental values and to avoid delays later in the process. DOE Order 4700.1 Attachment II-Part F(3) recommends that appropriate NEPA documentation be completed prior to initiation of detailed design.

Since the PROVE facility appears to be connected with the proposed PRMP with respect to NEPA, it should be noted that the PRMP is currently the subject of an environmental impact statement (EIS) analysis and as such, in accordance with Section 1506.1 of the Council on Environmental Quality regulations, interim actions related to it must not (1) have an adverse environmental impact, or (2) limit the choice of reasonable alternatives.

**Recommendations**

In accordance with the applicable CEQ regulations, DOE Orders, and DOE's NEPA Guidelines, an Action Description Memorandum (ADM) is needed describing the mission and potential environmental impacts associated with the PROVE facility, including its potential links to the PRMP. The ADM should be provided to the Office of Environment, Safety and Health for consideration as soon as possible so that a NEPA determination can be made and the appropriate NEPA requirements implemented.



SUBPOENA 1063RF EGG ITEM 15 5140383

Case 1:91-cv-01362-CFL Document 195-14 Filed 07/27/2006 Page 8 of 22

**Audit Discipline** National Environmental Policy Act

**Audit Finding Number** NEPA/AF-3

**Audit Finding Title** Adequacy of the Rocky Flats Plant Site-Wide Environmental Impact Statement

**Audit Finding and Applicable Reference**

The Rocky Flats Plant (RFP) Site Environmental Impact Statement (EIS) (DOE/EIS-0064), issued in 1980, was reviewed to determine if a supplemental EIS is required for RFP operations. The RFP EIS provides a fairly accurate description of the basic mission of the RFP, which has not changed significantly since 1980. However, several areas of concern regarding the adequacy of the RFP EIS were noted when considering (1) the bases for certain assumptions underlying calculations of environmental impacts, (2) the lack of analysis in some impact categories, and (3) the significance of several completed and/or proposed process modifications. Noteworthy areas of concern and/or deficiencies include:

1) No analysis is presented of potential impacts associated with earthquakes because the RFP EIS essentially assumes that all production facilities would remain intact in the event of an earthquake. This assumption is now generally agreed by experts to be false. The EIS did acknowledge that building design codes had become more restrictive after the majority of the key RFP production facilities were built and that a seismological study was being undertaken in conjunction with safety studies to determine the risks associated with seismic events at the RFP site. The EIS concluded by stating that "if the findings of the seismological study results in conclusions significantly different than those stated in the draft EIS, then DOE will supplement this EIS."

   Several studies completed since the RFP EIS was issued, including a recent report by DOE's Office of the Inspector General (IG) titled "Potential Impact and Mitigation of Seismic Events on Production Facilities at the Rocky Flats Plant (INS-0-89-1, January 13, 1989), have concluded that in the event of an earthquake several buildings at RFP are vulnerable to heavy damage or even destruction. Although some structural upgrades have been completed for buildings that are the greatest contributors to risk, the potential for leakage of contaminants from RFP remains in the event of an earthquake according to the IG report. The EIS commitment to revisit the earthquake analysis has not been satisfied in a NEPA document.

2) There is limited discussion, and no quantitative analysis of impacts to groundwater, for either radiological or hazardous chemical contamination, although RFP is now aware of such contamination. Although the RFP EIS identifies metals and organic chemicals used at RFP, it does not consider the fate of these potential pollutants. Sources of potential fluxes of contamination to the groundwater include percolation from settling ponds, contaminated surface water drainages, and rainwater leaching of radioactive and hazardous materials from contaminated soils. Potential impacts from these sources were not addressed in the RFP EIS.



SUBPOENA 1 ... SEE ITEM ...

3) There is a very limited analysis of hazardous (nonradiological) air emissions in the RFP EIS. The EIS specifies quantities of representative chemicals released to the air but does not calculate concentrations for comparison to applicable standards.

4) After the RFP EIS was issued, hazardous wastes and the hazardous component of mixed wastes at RFP became subject to regulation under the Resource Conservation and Recovery Act (RCRA). The potential impact of several RFP operations, e.g., waste characterization, storage, and processing, should be addressed in light of RCRA requirements.

5) Transuranic (TRU) waste processing facilities, storage areas, and transportation packaging facilities have been modified and/or constructed since the EIS was issued. Further, a comparison of the quantities of TRU projected to be generated at RFP as presented in the draft EIS for the Waste Isolation Pilot Plant indicates an increase in TRU generation rates relative to those of the RFP EIS.

6) The RFP EIS does not address impacts to RFP workers although it is current DOE policy to analyze significant occupational impacts in NEPA documents, to the extent possible.

7) RFP has an ongoing Environmental Restoration (ER) Program that has identified several cleanup activities and alternatives under both CERCLA and RCRA (some of which hold the potential for environmental impacts). Most of these environmental impacts were not identified in the RFP EIS, and, if so, they were not quantitatively analyzed. Additionally, an updated RFP site biological and environmental baseline (i.e., a record of flora and fauna, and soil and groundwater contamination) is being generated in conjunction with the ER program that supersedes that presented in the RFP EIS.

8) Several aspects of the field of safety analysis and risk assessment have evolved substantially and, as a result, may modify conclusions presented in the RFP EIS. (It may be possible to show that certain risks were overestimated.) Examples of changes include, new radiation dosimetry models, revised release fractions associated with accidents, new risk conversion factors for hazardous chemicals, and revised probabilities associated with the RFP maximum credible accident.

9) The RFP EIS does not discuss RFP's potential impacts to on-site and surrounding wetlands, although wetlands were noted during the NEPA audit.

10) Environmental impacts associated with construction and operation of the proposed Plutonium Recovery Modification Project (PRMP) must be addressed in the appropriate NEPA documentation, and the projects relationship to the RFP EIS, if any, must be clarified. Potential impacts on the RFP waste management system due to both the operation of PRMP and the decontamination and decommissioning of equipment in Building 371 preceding PRMP must be analyzed.

11) NEPA documentation requirements for the proposed operation of the new Plutonium Recovery Option Verification Exercise in Building 371, and any bearing on the conclusions drawn in the RFP EIS, must be resolved (see NEPA\AF-2).



SUBPOENA 100 RFP EGG ITEM 15 5130001

Applicable Citation and Requirements

The Council on Environmental Quality (CEQ) regulations for implementing NEPA (40 CFR 1502.9(c) specify the circumstances for which preparation of a supplemental EIS is required, if: (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

In addition, Section C.2(a)of DOE's NEPA guidelines states that "where it is unclear whether an EIS supplement is required, DOE will prepare an analysis which provides sufficient information to support a determination with respect to the criteria of 40 CFR 1502.9(c),(i) and (ii)." The guidelines go on to say that "Where DOE determines that an EIS supplement is not required, DOE will prepare a brief memorandum which explains the basis for that determination."

Finally, it is important to consider the usefulness of the RFP EIS as a general reference on which to base categorical exclusions in light of the guidance issued by the Office of Environment, Safety and Health (EH) on March 25, 1988. In the context of using a particular categorical exclusion that relies on actions being "substantially the same as" those in an earlier NEPA document, the memorandum states, that "In order for the assessment in the earlier document to be 'currently valid', the methods of analysis (e.g., risk assessments) and environmental regulations and standards applied in the earlier document must be essentially the same as those applicable today. If the environmental baseline has changed since the previous analysis, the previous analysis may not be valid."

Recommendations

When measured against the CEQ criteria for determining when a supplemental EIS is required, it could be argued that the net effect of the above-mentioned concerns would require preparation of a supplement to the RFP EIS. If a supplement is to be prepared, RFO should discuss the scope of the document with EH to ensure that it adequately implements a site-wide NEPA strategy. Consideration must be given as to the usefulness of either combining or separating (if it does not give rise to illegal segmentation under NEPA) several of the ongoing and proposed RFP projects, e.g., the Environmental Restoration Activities, the PRMP, the PROVE, and several waste management activities pertaining to processing TRU waste.

At a minimum, in accordance with the DOE guidelines, and in light of the RFP EISs commitment to revisit the issue of seismic risk, an analysis should be prepared to determine if a supplement is required. The analysis should be completed as soon as possible and sent to EH for a determination on whether a supplement to the RFP EIS is required.

Finally, RFP is cautioned regarding the use of the categorical exclusion that relies on the current validity of the RFP EIS as a means to provide NEPA coverage for newly proposed actions. The NEPA audit team finding number "AF-5" provides additional recommendations and discussion regarding use of categorical exclusions and the RFP EIS.



SUBPOENA 1063RF EGG ITEM 15 5140892

**Audit Discipline** National Environmental Policy Act

**Audit Finding Number** NEPA/AF-4

**Audit Finding Title** Inadequate Integration of NEPA/ CERCLA Documentation

**Audit Finding and Applicable Reference**

DOE Guidance regarding National Environmental Policy Act/Comprehensive Environmental Response, Compensation and Liability Act (NEPA/CERCLA) integration has not been adequately conveyed to the Rocky Flats Plant (RFP) and, as a result, the integration of the NEPA and CERCLA processes at the RFP has not been implemented. The general lack of guidance from DOE regarding integration of the NEPA and CERCLA processes makes it difficult for RFP to develop and efficiently implement plans for NEPA documentation for several high priority remedial actions, e.g., the 881 Hillside Area (see NEPA/BMP-2), the 903 Pad, and the East Trenches.

**Applicable Citation and Requirements**

DOE Notice 5400.4, "Integration of Environmental Compliance Process," establishes a Departmental policy to integrate, when possible, the requirements of the NEPA and Remedial Investigation/Feasibility Study (RI/FS) processes for remedial actions under CERCLA. The primary instrument for this is to be the RI/FS process, supplemented, as needed, to meet the procedural and documentational requirements of NEPA. The public review processes of CERCLA and NEPA will be combined for RI/FS-NEPA documents where appropriate.

**Recommendations**

In accordance with Notice 5400.4, NEPA/CERCLA integration should conform to the following general guidelines.

1) RFP's existing plans for NEPA documentation for CERCLA actions should be modified to integrate NEPA with the planned CERCLA process. RFP should consult with the Office of Environment, Safety and Health (EH), as necessary, regarding the implementation of the current NEPA/CERCLA integration policy.

2) For CERCLA remedial action activities for which it is not clear that an Environmental Impact Statement (EIS) will be required, a RI/FS-EA document should be prepared and submitted to EH for review and approval prior to the detailed analysis of the screened FS alternatives (i.e., no later than the conclusion of the FS Initial Screening step). This document is to include the RI (or draft RI), those sections of the draft FS which can be completed prior to the detailed analysis of alternatives, and a EA-level analysis of those alternatives. If appropriate, EH will issue a Finding of No Significant Impact (FONSI). If a FONSI can not be supported, the subsequent RI/FS process will be integrated with the EIS process to produce the RI/FS-EIS documentation.

   (It should be noted that in discussing the timing of RI/FS-EA documents with the RFP NEPA staff, concern was expressed that the level of EA analysis requested in the past by EH is not available at the conclusion of the FS Initial Screening

step. The RFP staff indicated that conceptional design is required for the level of detailed analysis that has been required. However, EH guidance to the field operations and programs has been that the DOE Notice 5400.4 provides sufficient warning that the needed information should be made available at this stage of the FS and that the RI/FS Work Plan should include plans for obtaining the information. RFP staff should consult with the Office of NEPA Project Assistance for further guidance and clarification of this guidance, if necessary.)

3) For CERCLA removal actions (i.e., a category of CERCLA activities that generally involve a short term response to a problem, possibly an emergency action to reduce an immediate danger or threat to the population or environment), NEPA requirements should be integrated with the Engineering Evaluation/Cost Analysis (EE/CAs). The EE/CAs (and a brief supplemental alternatives analysis, as appropriate, to meet the requirements of NEPA) should be submitted to EH for a determination of whether to issue a FONSI.

4) If it is determined that an EIS-level NEPA review is required for any category of actions proposed under CERCLA, the documentational requirements of an EIS are to be included in the FS document and the integrated draft RI/FS-EIS document is to submitted to EH for review and approval. The procedural requirements of the NEPA EIS process (such as a 45-day public comment period on the draft document) are also to be integrated into the RI/FS process.

5) For interim actions taken as removal or remedial actions, the CERCLA documentation (the EE/CA, "Interim Remedial Action Plan," or RI/FS) should include an appropriate level of NEPA analysis of alternatives and should be submitted to EH for a NEPA determination.

6) In response to the field's lack of understanding of the NEPA/CERCLA integration process, and in light of the many priority remedial action activities, it is recommended that EH issue additional guidance providing more specific details on implementation of the integration policy as soon as possible.

**Audit Discipline** National Environmental Policy Act

**Audit Finding Number** NEPA/AF-5

**Audit Finding Title** Inadequate or Inappropriate Use of Section D of DOE's NEPA Guidelines

**Audit Finding and Applicable Reference**

NEPA determinations made by the Albuquerque Operations Office did not properly reference categories of actions listed in Section D of the DOE NEPA Guidelines. In a review of forty-one NEPA determinations on proposed actions made since 1986, no reference to the use of Section D was found, although many of the determinations appeared to rely primarily on two categorical exclusions listed in Section D (either "Actions that are substantially the same as other actions for which the environmental effects have already been assessed in a NEPA document ..." or "General plant projects ...").

Twenty-seven of the forty-one proposed actions were determined to have adequate NEPA documentation based on the assertion that the actions are "substantially the same as actions previously evaluated in existing NEPA documentation and determined to be insignificant." The implicit use of this Section D categorical exclusion was rarely accompanied by required documentation to demonstrate that (1) the actions are substantially the same, (2) the effects were determined to be clearly insignificant, and (3) the (original) assessment is still valid.
In some of the Action Description Memoranda (ADMs) that support the NEPA determinations, a general statement was made that the 1980 Rocky Flats Plant site-wide EIS (DOE\EIS-0064) analyses were applicable, but the relevant sections of the EIS were not cited, nor were quantitative comparisons provided to support the claim. For the more recent NEPA determinations, it is particularly important to be specific when referencing the Rocky Flats Plant EIS in view of the caution expressed by both the President's Council on Environmental Quality and DOE NEPA guidance regarding reliance on NEPA documents that are more than five years old.

Inadequate use of Section D appears to have contributed to inappropriate NEPA determinations for certain projects. For example, the proposed Fluidized Bed Incinerator (FBI) Trial Burn was originally determined to be adequately covered by a Memo-to-File (MTF), despite its similarity to a class of actions listed in Section D that normally requires an EA ("DOE actions which enable or result in engineering development activities, i.e., detailed design, development, fabrication, and test of energy system prototypes"). Similarly, the proposed Supercompactor and Repackaging Facility (SRF), which would process 50,000 cubic feet of transuranic mixed waste annually, was originally determined to be adequately covered by a MTF. The proposed action has since been determined by Headquarters to require an EA.

The general lack of information and appropriate references in the NEPA determinations raises questions concerning the appropriateness of NEPA determinations similar to those used for the FBI and SRF for several additional actions reviewed in the NEPA determination files. For example:

| Proposed Action | Description |
|---|---|
| Plutonium Area Laundry | Construction of a new building to handle plutonium-contaminated clothing and respirators |
| Consolidated Non-Nuclear Manufacturing Facility | Action involves construction of a large building, guard post, and parking lot |
| Plutonium Analytical Laboratory | Action involves construction of a 99,700 square foot building |
| B-90 ND/SB Program Requirements | Action involves removal and decontamination of equipment |

## Applicable Citation and Requirements

DOE NEPA Guidelines (Compliance With the National Environmental Policy Act, 52 FR 47622, December 15, 1987), Section A.3 states that if the proposed action is listed in Section D, it should be determined if the action is categorically excluded from NEPA documentation or should be the subject of an EA or EIS. If the action is not listed in Section D, it should be determined if the effects are clearly insignificant and, if so, a MTF should be prepared. If the potential environmental impacts of the proposed action are unclear, an EA should be prepared to determine whether to issue a Finding of No Significant Impact or if an EIS is required.

The Office of Environment, Safety and Health (EH) issued NEPA Guidance related to the use of MTFs and categorical exclusions in a memorandum dated March 25, 1988. The guidance states that whenever the categorical exclusion which relies on "actions which are substantially the same as other actions ... assessed in a NEPA document", is proposed to be used, documentation similar to an MTF should be prepared to support the conclusion that the actions are substantially the same, the effects were determined to be clearly insignificant, and the assessment is still valid. Additionally, when relying on a site-wide EIS as the basis for this categorical exclusion particular note was made regarding the subjectivity of this reliance and it was cautioned that "It is very difficult to apply this categorical exclusion successfully, especially when relying on general, site-wide NEPA documents that are more than five years old."

The March 25, 1988 memo further states that if a proposed action does not fit clearly into a class of actions listed in Section D, and if it fails the test of "clearly insignificant", then an ADM should be prepared and submitted to EH for a determination of the appropriate level of NEPA documentation.

## Recommendations

NEPA determinations made by RFO should explicitly refer to Section D and state whether the proposed action is listed there, with specific reference to the applicable analysis in the Rocky Flats Plant EIS, if use of this document is appropriate (see NEPA Finding NEPA\AF-3). An item relating to Section D should be incorporated into the Environmental Checklist that is used by the RFP NEPA Compliance Committee.

Increased coordination between RFP and EH is needed to determine how categorical exclusions can be used more effectively for RFP proposed actions. Individuals responsible for making NEPA determinations should consult with EH regarding the

NEPA requirements for any proposal that does not clearly fit into a categorically excluded class of actions. NEPA determinations, and their associated ADMs, for all projects approved since 1980 should be sent to the Office of NEPA Project Assistance in EH for review.

**Audit Discipline** National Environmental Policy Act

**Audit Finding Number** NEPA/AF-6

**Audit Finding Title** Improper Forwarding of Memos-to-File to Headquarters

**Audit Finding and Applicable Reference**

NEPA determinations made at the field office level were not properly forwarded to Headquarters for review. A comparison of recent NEPA determinations maintained in records at the Rocky Flats Plant with NEPA determinations on file at DOE Headquarters in the Office of NEPA Project Assistance (EH-25) indicates that approximately 50% of the NEPA determinations made at the field office level could not be accounted for in the Headquarters files.

An examination of the RFP NEPA files found a total of forty-one NEPA determinations with supporting Action Description Memorandums (ADMs) made on proposed actions since the beginning of 1987. (Note: An additional nineteen ADMS were filed at the field office but were unaccompanied by any NEPA determination. It could not be determined whether these projects were cancelled, postponed or proceeded without a NEPA determination.) Twenty-two of the forty-one NEPA determinations included EH-25 on the distribution list, while the remaining nineteen did not. Twenty-four determinations were found in the EH-25 files. It could not be determined from the RFP files when and/or if the remaining copies were sent to EH-25.

EH-25 was informed by the Albuquerque Operations Office (ALO) in a memorandum dated May 17, 1988, that it would be providing copies of the NEPA determinations to EH-25 on a quarterly basis.

**Applicable Citation and Requirements**

NEPA Guidance Related to Memoranda-to-File and Categorical Exclusions (EH Memo dated March 25, 1988) states that, as specified in DOE Order 5440.1C, a copy of the documentation for such determinations is to be sent promptly to the Office of NEPA Project Assistance . . . "i.e., within two weeks of making the determination."

**Recommendations**

The DOE Office making the NEPA determination should send copies of all determinations (e.g., MTFs and Categorical Exclusions) to EH-25 within two weeks of the determination. Furthermore, although there is no requirement to send ADMs to EH-25 (except when the DOE Office is uncertain about the needed level of NEPA documentation), providing this supporting documentation would greatly improve and facilitate the ability of EH to review the NEPA determinations and provide feedback and guidance in a timely manner.

**Audit Discipline** National Environmental Policy Act

**BMP Finding Number** NEPA/BMP-1

**BMP Finding Title** Lack of a Coordinated Site-Wide NEPA Strategy

**BMP Finding**

1) The Rocky Flats Plant lacks a site-wide coordinated strategy to ensure compliance with the National Environmental Policy Act (NEPA), which fosters significant confusion regarding overall NEPA requirements at the site-wide, program, and project levels. The lack of a NEPA strategy at RFP has resulted in questionable determinations regarding the required level of NEPA documentation for a number of ongoing and/or proposed activities (e.g., Site Remediation, the Plutonium Recovery Modification Project, the Plutonium Recovery Option Verification Exercise, and the Supercompactor and Repackaging Facility). The NEPA audit team's review of 1980 RFP Site-Wide Environmental Impact Statement (EIS) adds to the team's concerns regarding the adequacy of NEPA coverage for RFP (see NEPA/AF-3).

2) It appears that one of the major causes of this lack of NEPA understanding and planning is the unavailability of RFP staff that can be assigned to ensure that the requirements of NEPA are satisfied. For example, the Rockwell NEPA Compliance committee (NCC), established in January 1989, is responsible for oversight and review of the NEPA planning and review process, training, consultation, and maintenance of the Rockwell's centralized NEPA files. However, none of the NCC members are able to devote more than a small fraction of their time to NEPA activities.

3) Inadequate communication and coordination, due to both a lack of understanding of the requirements of NEPA and to a lack of time, was noted among those responsible for implementing the NEPA process at the RFP. Misunderstandings, often resulting in the need for time-consuming and costly revision of NEPA documents, appear to have been caused, in part, by conflicting responses and guidance received from Headquarters, Albuquerque Operations Office, and RFP. At the time of the NEPA audit it was not clear who had the responsibility for making the NEPA decisions at RFP.

4) Neither RFO or Rockwell currently have computerized systems to track the status of the NEPA review process and the status of NEPA documents (e.g., environmental assessments, environmental impact statements, categorical exclusions, and Memoranda-to-File). The NEPA audit team understands that a computerized data base for NEPA is under development by Rockwell, and the status of NEPA review for all projects is being included in the "Facilities Project Status Summary Report."

**Applicable BMP and Recommendations**

1) It is a fundamental premise of NEPA that consideration of environmental impacts be a part of an agency's decision making and planning processes. DOE's NEPA Order 5440.1C as well as DOE Order 4700.1, "Project Management System" requires NEPA integration <u>early</u> in the planning phases of the Department's activities.

It is recommended that an appropriate team of Headquarters and RFP managers and staff be established to develop a site-wide NEPA strategy to be presented to the Secretary for consideration. NEPA documentation requirements for individual projects should be determined based on this site-wide strategy.

2) Additional RFP staff are necessary to facilitate a more comprehensive interface with on-site functional groups in an ongoing process to ensure that DOE policy and procedures regarding implementation of NEPA are part of their planning process.

3) The responsibilities and authorities for implementing various elements of the NEPA process at RFP should be clearly delineated, particularly in light of the recent management restructuring within DOE.

4) All personnel charged with implementing the NEPA requirements should be provided with NEPA training and the appropriate written guidance materials. The Office of NEPA Project Assistance should consider conducting a NEPA training workshop at the RFP.

5) The RFP should develop and implement a computerized tracking system for the status of all NEPA and NEPA-related documents and decisions and the status of NEPA-review process for all proposed actions.



SUBPOENA 106 RF EGG ITEM 15 5140905

| | |
|---|---|
| **Audit Discipline** | National Environmental Policy Act |
| **BMP Finding Number** | NEPA/BMP-2 |
| **BMP Finding Title** | Lack of NEPA/CERCLA Integration for the 881 Hillside Area Remedial Action |

**BMP Finding**

1) Lack of Integration: NEPA documentation being prepared for the 881 Hillside Area remedial action has not been properly integrated with CERCLA documentation. In particular, a draft Environmental Assessment (EA) prepared for NEPA purposes was not integrated with the Remedial Investigation/Feasibility Study (RI/FS) prepared to satisfy requirements of CERCLA. Although integration of NEPA and CERCLA documentation is not mandatory within DOE, it is the Department's policy to do so, if possible, to reduce resources needed to implement both processes separately.

2) Environmental Assessment Review: Because separate NEPA documentation was drafted for the 881 Hillside Area remedial action, it was reviewed by the NEPA audit team to determine if it provided an adequate NEPA analysis. The draft EA was found to contain substantial deficiencies. For example, there is no demonstration that the Ambient Air Quality Standards for inhalable particulates would be met, risks from wind dispersion of radionuclide contaminated soils has not been evaluated for remedial action workers, and there is no assessment of impacts to the general Rocky Flats Plant population. In addition, there is a lack of descriptive information on the proposed action and the RFP site (e.g., on hydrogeology, effectiveness of the proposed action, administrative controls, mitigative measures, and compliance with ARARs).

3) Relevance of Subsequent CERCLA Documentation: While conducting the on-site NEPA audit, it was brought to that teams attention that since the draft EA was prepared an interim action has been proposed for the 881 Hillside Area to mitigate potential groundwater contamination. A document referred to as an "Interim Remedial Action Plan", which conforms in part to an Engineering Evaluation/Cost Analysis, has been prepared under CERCLA to address interim action activities. A preliminary review of this document indicates that it contains much of the descriptive information that the EA lacks (e.g., RFP environmental baseline and hydrogeologic discussion).

**Applicable BMP and Recommendations**

DOE Notice 5400.4, "Integration of Environmental Compliance Processes," established to Department's policy to integrate the requirements of the NEPA and Remedial Investigation/Feasibility Study (RI/FS) processes for remedial actions under CERCLA. The primary instrument to satisfy the integration process was identified as the RI/FS process. This process is to be supplemented, as needed, to meet the procedural and documentational requirements of NEPA. NEPA finding number NEPA/AF-4 provides a general discussion regarding implementation of DOE Notice 5400.4 (reference NEPA/AF-4).

Based on the NEPA audit team's review of the draft EA, and in light of the information presented in the "Interim Remedial Action Plan," the most expedient NEPA strategy for the 881 Hillside Area Remediation would be to redirect efforts toward an integrated

NEPA/CERCLA approach. This could be accomplished by supplementing the existing "Interim Remedial Action Plan" with an environmental analysis based on Chapters 5 and 6 of the draft EA, "Environmental Effects of the Proposed Action" and "Environmental Effects of Alternatives," respectively. These chapters should be revised to address the deficiencies outlined above. RFP should contact the Office of NEPA Project Assistance to discuss the details and scope of the environmental analysis, if necessary.

The resulting integrated document would provide NEPA coverage for the proposed interim action. Additional NEPA analysis will likely be needed before final remediation can take place.



SUBPOENA 1063RF EGG ITEM 15 5140905

**Audit Discipline** National Environmental Policy Act

**BMP Finding Number** NEPA/BMP-3

**BMP Finding Title** Need to Expedite NEPA Determinations for the 903 Pad, Mound, and East Trenches Hazardous Wastes Burial Sites and Other Remedial Actions

**BMP Finding**

It is critical that NEPA determinations for all CERCLA remedial action projects be made in a timely manner to facilitate effective integration of NEPA documentation requirements into the CERCLA process (see NEPA Finding NEPA/AF-4). An Action Description Memorandum (ADM) for the "903 Pad, Mound and East Trenches Hazardous Waste Burial Sites Remedial Actions" was prepared and submitted by Rockwell to RFAO in March 1989. The ADM was forwarded to DOE's Albuquerque Operations Office for a NEPA determination, which at the time of the NEPA Audit was still pending. The subject remedial action has been identified as a priority action in the June 28, 1989, "Rocky Flats Plant Agreement in Principle" between DOE and the State of Colorado, with interim cleanup activities (pursuant to the "903 Pad Groundwater Cleanup" provision of the agreement) scheduled to begin by January 1990.

**Applicable BMP and Recommendations**

DOE Notice 5400.4 established a Departmental policy to integrate, when possible, the documentational and procedural processes of NEPA and CERCLA. Implementation of these processes should begin during a project's early planning stages to avoid potential programmatic delays. Further, in accordance with NEPA guidance issued by the Office of Environment, Safety and Health (EH) in a memorandum dated March 25, 1988, "If a proposed action does not fit clearly into a class of actions listed in Section D of the DOE NEPA guidelines, and if it fails the test of 'clearly insignificant', then an ADM should be prepared and submitted to EH for a determination of the appropriate level of NEPA documentation." Therefore, it is recommended that the ADM for the 903 Pad remedial actions, and any other ADMs for priority remedial actions, be forwarded to EH for NEPA determinations as soon as possible.

It is particularly important that a timely NEPA strategy be developed for the 903 Pad cleanup activities because, although interim actions that may involve groundwater pump-and-treat activities would not appear to require substantial environmental analysis, potential environmental impacts associated with continued remedial actions involving soil disturbance at the 903 Pad may require a more extensive NEPA analysis. If the scope of the current ADM for the 903 Pad activities does not adequately address the potential for further spread of plutonium as a result of soil disturbance during remedial actions at the 903 Pad and the potential for possible cumulative impacts of airborne transport of hazardous materials during remedial activities from other proposed remedial sites, this information should be submitted as an addendum to the 903 Pad ADM.



SUBPOENA 1065RF EG&G ITEM 15 5140906

| | |
|---|---|
| Audit Discipline | National Environment Policy Act |
| Audit Finding Number | NEPA/NP-1 |
| Audit Finding Title | Rockwell NEPA Compliance Committee |

## Noteworthy Practice

A Rockwell NEPA Compliance Committee (NCC) was formed in January 1989 to provide oversight, guidance, and review for the RFP NEPA documentation requirements. Membership include Rockwell Managers or designees from the following Groups:

- Environmental Management
- Facilities Project Management
- Legal Department
- RCRA/CERCLA Programs
- Safety Analysis

A Rockwell policy document entitled "Rocky Flats Plant Implementation of Documentation Requirements for the National Environmental Policy Act (NEPA)" (EM-0800) was prepared. Particular emphasis is given to review and screening of proposed projects. Environmental Checklists (ECS) are now required to be prepared by Project Administrators (PAs) for all proposed projects following Rockwell general staff and DOE-RFAO approval of the project. ECs are reviewed by the NCC and an Environmental Checklist Review Form is prepare which documents whether additional documentation is required (i.e., and ADM).

Although RFAO is not represented on the Rockwell NCC; all major Rockwell NEPA decisions are subject to the formal DOE review process. Minor NEPA decisions are documented in Environmental Checklist reviews. The chair person of the NCC has agreed to send copies of the completed NEPA Environmental Checklist reviews to RFAO.

In addition, a NEPA training program is being offered for RFP building managers, HS&E area engineers, and Facilities Project Management staff for the purpose of presenting the fundamental requirements of NEPA and to stress the importance of implementing NEPA during the early planning stages for a proposed project.

The NEPA audit team believes that this policy and its procedures are an outstanding example of an approach to implement the requirements of NEPA in an effective and timely fashion.



SUBPOENA 1065RF EGG ITEM 15 5140908