UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE BOEING COMPANY, SUCCESSOR-IN-INTEREST TO ROCKWELL INTERNATIONAL CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 91-1362 C (Judge Lettow) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant United States of America hereby submits its response to Plaintiff's Proposed Findings of Uncontroverted Fact.

THE ROCKY FLATS CONTRACT

1. The United States, by the United States Department of Energy ("DOE"), and Rockwell entered into Modification No. M087, Supplemental Agreement to Contract DE-AC04-76DP03533 ("the 1986 Contract"), which was the contract governing Rockwell's performance at the Rocky Flats nuclear weapons facility effective January 1, 1986, through December 31, 1988. Ex. 2 at 1, 152, 158.

**Response: Disagree. Modification No. M087 was modified from time to time during the period January 1, 1986, through December 31, 1988. Defendant would agree if the proposed fact is amended to read: ". . . Modification No. M87 . . ., which, as amended from time to time, was the contract governing Rockwell's performance at the Rocky Flats nuclear weapons facility effect January 1, 1986, through December 31, 1988."**

2. The 1986 Contract was a management and operating ("M&O") contract. *See id*. at 3 (clause 2(a)).

**<u>Response</u>:** **Agree.**

3. In January 1989, the United States, by DOE, and Rockwell executed Modification No. M124, Supplemental Agreement to Contract DE-AC04-76DP03533 ("the 1989 Contract"). Ex. 1 at 184.

**<u>Response</u>:** **Agree.**

4. The 1989 Contract was an M&O Contract. *See id.* at 3 (clause 2(a)).

**<u>Response</u>:** **Agree.**

5. The 1989 Contract states that it is "the entire agreement of the parties with respect to performance by the Contractor on and after January 1, 1989, without in any way affecting the rights of the parties under prior contractual agreements for periods of time prior to January 1, 1989." *Id.* at 2.

**<u>Response</u>:** **Agree.**

6. The 1989 Contract contains a clause entitled, "STATEMENT OF WORK," which states, "The Government expressly engages the Contractor to manage, operate and maintain the Rocky Flats Plant and to perform the work and services described in this contract including Appendix B, 'Scope of Work,' . . . . Appendix B, by this reference, is hereby incorporated into and made a part of this contract." *Id.* at 3 (clause 2; clause 2(a)).

**<u>Response</u>:** **Agree.**

7. Appendix B to the 1989 Contract states, "The Contractor shall, in accordance with the provisions of this contract, use its best efforts to manage, staff, maintain, and operate the Rocky Flats Plant within available funds so as to carry on in an efficient manner all necessary and related services and operations." *Id.* at App. B, page 1 of 5.

**<u>Response</u>: Agree.**

8. The 1989 Contract states, "The Contractor shall take all reasonable precautions in the performance of the work under this contract to protect the environment . . . and shall comply with all applicable environment, safety and health regulations and requirements (including reporting requirements) of DOE." *Id*. at 123 (clause 56).

**<u>Response</u>: Agree.**

9. The 1989 Contract provides for Rockwell to be paid its allowable costs, a fixed or base fee and "so much, if any, of the award fee as may be determined by the Contracting Officer, as hereinafter provided." *Id*. at 130 (clause 62(a)).

**<u>Response</u>: Agree.**

10. In February 1989, the United States, by DOE, and Rockwell executed Modification No. M128, Supplemental Agreement to Contract DE-AC04-76DP03533 ("1989 Contract, as amended," or "Mod. M128"), effective October 1, 1988. Ex. 3 at 1, 4.

**<u>Response</u>: Agree.**

11. Mod. M128 amended the two 1989 Contract clauses entitled, "Base Fee and Award Fee" and "Determination of Award Fee," and revised in its entirety Appendix D to the 1989 Contract, which was entitled "AWARD FEE PLAN FISCAL YEAR 1989." Ex. 3 at 2-4; Ex. 1 at 130-32 and App. D.

**<u>Response</u>: Agree.**

12. Subparagraph (b)(1) of Mod. M128 states,

> [T]he maximum award fee available for payment to the Contractor during [the period October 1, 1988, through September 30, 1989,] is $13,644,000 for Plant and $1,938,600 for PRMP/PROVE [the Plutonium Recovery Modification Project/Plutonium Recovery Options Verification Exercise] . . . . The amount of the award fee actually to be paid to the Contractor shall be determined by the Award Fee Determination Official (Manager, or anyone acting as Manager, Albuquerque Operations) in accordance with the provisions of subparagraph (b)(2) of this clause.

Ex. 3 at 2.

**Response: Agree.**

13. Subparagraph (b)(2) of Mod. M128 states, "Determinations of award fee will be made every six months[.] . . . The award fee shall be determined subjectively by the Award Fee Determination Official based on the Contractor's performance in accordance with the Award Fee Plan set forth in Appendix D." *Id*. at 3.

**Response: Agree.**

14. Mod. M128 states that Appendix D "is attached to and incorporated in this Supplemental Agreement as 'Attachment A.'" *Id*. at 4.

**Response: Agree.**

15. Appendix D to the 1989 Contract, as amended, states,

> The Award Fee Determination Official (Manager or anyone acting as Manager, Albuquerque Operations) (AFDO) shall evaluate the Contractor's performance during each evaluation period and will determine the amount of award fee to be paid the Contractor for that evaluation period. Evaluation of the Contractor's performance will be based upon the Performance Evaluation Plans established for the evaluation period by the AFDO, after consultation with the Contractor.

*Id*. at Attach. A, page 1 of 9.

**Response: Agree.**

16. Appendix D to the 1989 Contract, as amended, states, "Performance Evaluation Plans will consist of . . . approximately 5-10 . . . identifiable areas of contract work which are designated as 'Functional Performance Areas' (FPA's); and . . . the specified weighting assigned to each FPA." *Id*. at Attach. A, page 1 of 9; *see also id*. at Attach. A, pages 3 and 4 of 9.

**Response: Agree.**

17. Appendix D to the 1989 Contract, as amended, states, "The Contractor's performance of each FPA will be evaluated in terms of a numerical grade taken from the Rating Plan set forth in Section 4. below." *Id*. at Attach. A, page 2 of 9.

**Response: Agree.**

18. Appendix D to the 1989 Contract, as amended, states, "Using the numerical grades and weights assigned each FPA, the award fee to which the Contractor is entitled shall then be determined . . . . Final award fee determination shall be made by the AFDO." *Id.*

**Response: Agree.**

19. Appendix D to the 1989 Contract, as amended, allowed DOE to establish Goal Achievement Objectives ("GAOs") which would permit Rockwell to receive additional fees if Rockwell met the GAO performance criteria and otherwise maintained a "minimum Performance Evaluation Plan(s) rating of 88 and no single FPA below satisfactory." *Id*. at Attach. A, pages 8 and 9 of 9; *see also id*. at Attach. A, pages 2 and 3 of 9.

**Response: Agree.**

20. DOE established two GAOs for the 1989 Contract, one of which, GAO-89-2, was entitled "Waste Minimization." *See* Ex. 4, DOE letter issuing GAOs, Mar. 17, 1989.

**Response: Agree.**

THE TWO FISCAL YEAR 1989 AWARD FEES

21. In September 1993, during the course of this litigation, government counsel signed a stipulation (the "Stipulation") setting forth certain facts concerning DOE's determination of the two six-month award fees at issue in this action, specifically, award fees for the period October 1, 1988, through March 31, 1989 (the "89/1 Period") and April 1, 1989, through September 30, 1989 (the "89/2 Period"). Ex. 5, Stipulation.

**Response: Agree.**

The 89/1 Period

22. Defendant stipulated that in May 1989, the AFDO "concluded that Rockwell['s] award fee for Plant Operations at the Rocky Flats Plant for the 89/1 [P]eriod should be $5,176,482 and forwarded his conclusion to DOE headquarters for concurrence." *Id.* ¶ 1.

**Response: Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO. The language in ¶ 1 of the stipulation makes it clear that AFDO was not a short-hand expression for Mr. Twining, but rather for anyone acting as manager of Albuquerque. Defendant would agree to a proposed fact that tracks the precise language of the stipulation, ¶ 1.**

23. Appendix D to the 1989 Contract, as amended, states,

> If such sum [of the numerical grades for all the FPAs] is over seventy (70) and the overall performance under a Performance Evaluation Plan is not less than "satisfactory," [Rockwell] shall be entitled to a proportionate share of the maximum available award fee for the Performance Evaluation Plan

> involved.
>
> The proportionate share of the maximum available award fee . . . shall be computed in accordance with the following Award Fee Performance Table.

Ex. 3 at Attach. A, page 6 of 9.

**<u>Response</u>: Agree.**

24. The Award Fee Performance Table in Appendix D to the 1989 Contract, as amended, provides for an award fee of $5,225,312 ($545,760 + $1,023,300 + $1,350,075 + $1,773,720 + $532,457) if the sum of the numerical grades for all FPAs is 91. *See id.* at Attach. A, pages 6 and 7 of 9.

**<u>Response</u>: Agree.**

25. In the Performance Evaluation Review Board Recommendation supporting the AFDO's May 1989 determination of Rockwell's award fee for the 89/1 Period, no FPA was graded below "SATISFACTORY." Ex. 6, Performance Evaluation Review Board Recommendation.

**<u>Response</u>: Disagree. Manager Twining's May 1989 action was his "conclusion" and "recommendation" to DOE Headquarters, but it never became final. It therefore was not a "determination." Defendant would agree to a proposed fact phrased as follows: "In the Performance Evaluation Review Board Recommendation supporting Manager Twining's May 1989 recommendation to DOE Headquarters's regarding Rockwell's award fee for the 89/1 Period, no FPA was graded below 'SATISFACTORY.'"**

26. In April 1993, Defendant admitted that "if Rockwell, for the [89/1 Period], had received an overall Plant Performance Evaluation Plan rating of 88 or higher, with no single [FPA] rated below satisfactory, Rockwell would have been entitled to an award of $600,000 for reduction in halogenated solvent use with respect to the Waste Minimization

GAO" and "$110,160 for reduction in process waste water generation with respect to the Waste Minimization GAO." Ex. 7, Def.'s Resps. to Pl. Rockwell International's First Set of Reqs. for Admis., Apr. 14, 1993, at 8, 12.

**Response: Agree.**

27. When the AFDO forwarded his conclusion regarding Rockwell's award fee for the 89/1 Period to DOE headquarters in May 1989, he also forwarded his determinations of award fees for several other DOE contractors under his supervision. *See* Ex. 5, Stipulation, ¶ 1; Ex. 8, Def.'s Second Am. Answer ("SAA"), filed Mar. 28, 2006, ¶ 51.

**Response: Disagree. Manager Twining's May 1989 "conclusions" and "recommendations" regarding award fees for several other DOE contractors under his supervision were not "determinations" until DOE Headquarters concurred.**

28. The AFDO who forwarded his conclusion regarding Rockwell's award fee for the 89/1 Period to DOE headquarters in May 1989 was Bruce Twining. *See* Ex. 8, SAA, ¶ 51.

**Response: Agree.**

29. Defendant averred that, on or about June 6, 1989, Undersecretary of Energy John Tuck "remov[ed] Mr. Twining . . . from substantive oversight responsibility over the Rocky Flats Plant"; that thereafter Mr. Twining "no longer had direct supervision over, or substantive duties concerning, the Rocky Flats Plant"; and that "[i]nstead, Mr. Twining's role was limited to ministerial functions and providing support to the Rocky Flats Plant Manager as needed." *Id*. ¶¶ 56, 57.

**Response: Agree.**

30. Defendant stipulated that "[i]n June 1989, DOE headquarters advised the AFDO that it did not concur in his conclusion that [Rockwell's] award fee should be $5,176,482 [for Plant Operations for the 89/1 Period]." Ex. 5, Stipulation, ¶ 2.

**Response: Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO.**

31. Defendant averred that

> [o]n June 21, 1989, Mr. Troy Wade, DOE's Assistant Secretary for Defense Programs, wrote a letter to Mr. Twining informing him that Mr. Twining could pay the award fees he (Twining) had proposed to all of the contractors listed in the May 31, 1989 letter from Mr. Twining to Mr. Wade, with the exception of Rockwell.

Ex. 8, SAA, ¶ 64.

**Response: Agree.**

32. Defendant stipulated that "DOE headquarters determined that the award fees for Plant Operations at Rocky Flats for the 89/1 [P]eriod initially arrived at by the AFDO in May 1989" were "too high." Ex. 5, Stipulation, ¶ 6.

**Response: Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO.**

33. Defendant stipulated that "DOE headquarters mandated that the award fee for Plant Operations for the 89/1 [P]eriod be $2,716,624, and caused the AFDO to issue a final award fee determination in that amount." *Id.* ¶ 7.

**Response:** **Agree, with the proviso, that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO.**

34. Defendant stipulated that "[t]he $2,716,624 award fee for Plant Operations for the 89/1 [P]eriod was determined by DOE headquarters." *Id.* ¶ 8.

**Response:** **Agree.**

35. The award fee for Plant Operations determined by DOE headquarters represented an overall award fee grade of 84.25. *See* Ex. 9, DOE headquarters memorandum to AFDO, Sept. 20, 1989; Ex. 8, SAA, ¶ 74.

**Response:** **Agree.**

36. An overall award fee grade of 84.25 made Rockwell ineligible for any fee under the Waste Minimization GAO. *See* Ex. 4, DOE letter issuing GAOs.

**Response:** **Agree.**

The 89/2 Period

37. Defendant stipulated that in December 1989, the AFDO "concluded that Rockwell's award fees for the 89/2 [P]eriod should be $3,114,245 for Plant Operations and $628,982 for PRMP/PROVE and forwarded his conclusion to DOE headquarters for concurrence." Ex. 5, Stipulation, ¶ 9.

**Response:** **Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO. The language in ¶ 9 of the stipulation makes it clear that AFDO**

**was not a short-hand expression for Mr. Twining, but rather for anyone acting as manager of Rocky Flats. Defendant would agree to a proposed fact that tracks the precise language of the stipulation, ¶ 9.**

38. Defendant stipulated that "DOE headquarters determined that both the $3,114,245 award fee for Plant Operations and the $628,982 award fee for PRMP/PROVE for the 89/2 [P]eriod that were forwarded by the AFDO were too high." *Id*. ¶ 10.

**<u>Response</u>: Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO.**

39. Defendant stipulated that "DOE headquarters mandated that the award fee for Plant Operations for the 89/2 [P]eriod be $1,241,604, and the award fee for PRMP/PROVE be $338,035, and caused the AFDO to issue a final award fee determination in those amounts." *Id*. ¶ 11.

**<u>Response</u>: Agree, with the proviso that, following the FBI/EPA raid, DOE Headquarters took over Mr. Twining's substantive responsibilities for Rocky Flats, and thereby took upon itself the function of "acting as Manager, Albuquerque," and therefore as AFDO.**

40. Defendant stipulated that "[t]he award fee for Plant Operations of $1,241,604, and the award fee for PRMP/PROVE of $338,035 for the 89/2 [P]eriod were both determined by DOE headquarters." *Id*. ¶ 12.

**<u>Response</u>: Agree.**

THE *STONE* FALSE CLAIMS ACT TRIAL AND APPEAL

41. In July 1989, James Stone brought an action captioned *United States ex rel. Stone v. Rockwell International Corporation*, No. 89 C 1154 ("*Stone*"), in the United States District Court for the District of Colorado ("District Court"). Ex. 10, Compl. Under False Claims Act ("FCA") in *Stone*.

**Response: Agree.**

42. In November 1996, the District Court granted the government's request to intervene in *Stone*. Ex. 13, Mem. Op. and Order in *Stone*, Nov. 19, 1996.

**Response: Agree.**

43. In December 1996, the government and Mr. Stone filed an amended complaint, in which the government alleged violations of the FCA, common law fraud, breach of contract, payment by mistake, and unjust enrichment. Ex. 14, Am. Compl. in *Stone*, ¶¶ 83-103.

**Response: Agree.**

44. The government's claims in *Stone* related to alleged violations of the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA") that were the subject of a criminal plea agreement between Rockwell and the government in 1992. *See id*. ¶¶ 34, 35, 46, 61.

**Response: Agree.**

45. In 1992, Rockwell pled guilty to four felony counts under RCRA and one felony and five misdemeanor counts under CWA. Ex. 15, Plea Agreement and Statement of Factual Basis, at 1, 7, 14.

**Response: Agree.**

46. In *Stone*, the government alleged that Rockwell made misrepresentations or omissions to DOE regarding the subject of certain of these criminal counts, in violation of the FCA; that those misrepresentations or omissions were made with requisite intent to establish common law fraud; and that these criminal violations of RCRA and CWA, and the misrepresentations or omissions concerning them, constituted breaches of the Rocky Flats contract. Ex. 14, Am. Compl. in *Stone*, ¶¶ 29-68, 83-95.

**Response: Agree.**

47. In *Stone*, the government alleged that Rockwell breached the Rocky Flats contract, among other ways, by making various misrepresentations or omissions to DOE from March 1987 through July 1989. *See id.* ¶¶ 37-41, 47, 60, 92-95.

**Response: Agree.**

48. In *Stone*, a jury trial was held on the counts the government pled against Rockwell for alleged violations of the FCA, common law fraud and breaches of contract. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 795-96 (10th Cir. 2002) ("*Stone Appeal*").

**Response: Agree.**

49. The *Stone* jury trial lasted 25 days. *See id.* at 809.

**Response: Agree.**

FCA Claims

50. The *Stone* jury found for the government on three false claims, covering award fee periods April 1, 1987, through September 30, 1987; October 1, 1987, through

March 31, 1988; and April 1, 1988, through September 30, 1988. Ex. 16, Verdict Form in *Stone*.

**__Response__: Agree.**

51. The *Stone* jury found for Rockwell on the remaining seven false claims, including the two claims concerning the award fee periods October 1, 1988, through March 31, 1989; and April 1, 1989, through September 30, 1989. *Id*.

**__Response__: Disagree. Plaintiff's formulation of this proposed fact is insufficiently precise In fact, there were two distinct kinds of claims at issue in *Stone*. The first category was claims for award fees. The jury found for the United States as to three award fee periods, and for Rockwell as to three award fee periods. The second kind of claims related to Rockwell's expenditures of government monies: the jury was asked to determine whether forms covering Rockwell's costs called "Vouchers Accounting for Net Expenditures Accrued" ("VANEAs") were false or not. The time periods covered by the VANEAs overlapped with the time periods covered by the award fees, but, as noted, the VANEAs related to costs, rather than award fees. The jury found that none of Rockwell's claims as to costs (VANEAS) were false, but that 50% of Rockwell's claims as to award fees were false. Defendant would agree to a proposed fact phrased more precisely as follows: "The *Stone* jury found for Rockwell on three false claims covering three other award fee periods. The *Stone* jury also found for Rockwell with respect to another category of claims, i.e., claims called 'Vouchers Accounting for Net Expenditures Accrued' or 'VANEAs.' VANEA's related to Rockwell's costs under the contract, as opposed to award fees. There were four VANEAS at issue; the jury found for Rockwell as to all four."**

52. The *Stone* jury awarded compensatory damages of $1,390,775.80 on the three FCA claims on which the government prevailed. *Id*.

**<u>Response</u>: Agree.**

53. On May 13, 1999, the District Court ordered entry of final judgment, awarding treble damages under the FCA in the amount of $4,172,325 and the FCA's minimum statutory penalty of $5,000 for each violation, or $15,000 in total, for the three false claims. Ex. 17, Order for Entry of Final Judgment in *Stone*.

**<u>Response</u>: Agree.**

54. Judgment was entered on May 13, 1999, in conformance with the District Court's order of May 13, 1999. *See id.*; Ex. 18, Judgment in *Stone*.

**<u>Response</u>: Agree.**

55. On June 10, 1999, the District Court entered an amended final judgment correcting a few ministerial errors and otherwise confirming the May 13, 1999, judgment in its entirety. Ex. 19, Order to Amend Final Judgment to Correct Clerical Errors in *Stone*; Ex. 20, Am. Judgment in *Stone*.

**<u>Response</u>: Agree.**

<u>Common Law Fraud Claim</u>

56. In its Order for Entry of Final Judgment Pursuant to Rule 54(b), the District Court

> ruled that judgment should enter for the defendants, as a matter of law, under Fed. R. Civ. P. 50(a) on the claim of the United States for damages for common law fraud, a claim that was not submitted to the jury because the government withdrew it. In the alternative, considering the oral motion to withdraw as a motion under Fed. R. Civ. P. 41(a)(2), the court orders that dismissal of the claim must be with prejudice.

Ex. 17 at 1-2.

**<u>Response</u>: Agree.**

57. In the *Stone* Amended Judgment, the common law fraud claim was dismissed with prejudice. *See* Ex. 20, Am. Judgment in *Stone*; Ex. 14, Am. Compl. in *Stone*, at 25.

**<u>Response</u>: Agree.**

<u>Breach of Contract Claims</u>

58. In instructing the *Stone* jury on the government's breach of contract claims, the District Court stated:

> The government has made a separate claim for breach of contract. The government alleges that the defendant breached the DOE-Rockwell Contract by failing to report accurately to the Department of Energy (a) defendant's compliance with applicable environmental regulations and requirements of the Department of Energy relating to pondcrete, saltcrete, and spray irrigation, and (b) compliance with the requirements of the United States and of the State of Colorado in procuring the necessary permits. . . .
>
> * * *
>
> The government also alleges that defendant breached the DOE-Rockwell Contract through operational failures relating to defendant's production, handling, and storage of pondcrete and saltcrete at Rocky Flats.

Ex. 21, Jury Instructions, at 15-17.

**<u>Response</u>: Agree.**

59. The *Stone* jury found for Rockwell on the breach of contract claims. Ex. 16, Verdict Form.

**<u>Response</u>: Agree.**

60. Separately, the *Stone* jury found that the government sustained no breach of contract damages. *Id*.

**<u>Response</u>: Agree.**

61. The *Stone* Amended Judgment dismissed the breach of contract claims with prejudice. *See* Ex. 20, Am. Judgment in *Stone*; Ex. 14, Am. Compl. in *Stone*, at 26.

**Response: Agree.**

The *Stone* Appeal

62. The *Stone* parties appealed the District Court's judgment to the Tenth Circuit. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1166-67 (10th Cir. 2001).[1]

**Response: Agree.**

63. On September 24, 2001, the Tenth Circuit affirmed the District Court's rulings "on all counts." *See id*. at 1184.

**Response: Agree.**

64. On March 4, 2002, following a petition for rehearing by Rockwell limited to whether Mr. Stone qualified as an "original source" under the FCA, the Tenth Circuit ordered a limited remand on the "original source" issue, but stated that as to "all other issues . . . , the rulings made previously in our opinion are undisturbed." *See Stone Appeal*, 282 F.3d at 792, 815.

**Response: Agree.**

65. The *Stone Appeal* affirmed the District Court's dismissal of the government's common law fraud claim with prejudice. *See id*. at 792, 808-11, 809 n.8.

**Response: Agree.**

[1] This opinion does not appear in the bound volume of the Federal Reporter, but is available at 2001 WL 117107.

66. In *Stone*, the government appealed the judgment that Rockwell did not breach the Rocky Flats contract through operating failures. *See* Ex. 22, Brief for Appellee/Cross-Appellant the United States of America, at 1, 4-8; *Stone Appeal*, 282 F.3d at 812 ("The Government's breach of contract theory was based on the argument that Rockwell's failure to operate the Rocky Flats facility in compliance with applicable environmental laws represented a breach of contract.").

**<u>Response</u>: Agree.**

67. The government did not appeal the District Court judgment that Rockwell's alleged reporting failures did not breach the contract. *See* Ex. 22, Brief for Appellee/Cross-Appellant the United States of America, at 1, 4-8.

**<u>Response</u>: Agree.**

68. On appeal, the government argued that "because Rockwell's contract with DOE imposed a duty on Rockwell to comply with all applicable environmental laws, including [RCRA], Rockwell's guilty plea to violations of that statute conclusively establishes that it breached its duties under the contract and that it could not re-litigate that issue." *Stone Appeal*, 282 F.3d at 813.

**<u>Response</u>: Agree.**

69. After reviewing the District Court's jury instructions, "the text of the contracts and relevant case law," the Tenth Circuit held "that a reasonable jury could find (and in this case, did find) that a defendant who violated applicable laws nonetheless used its best efforts to fulfill its obligations under the contract, and thus find that no breach occurred." *Id.* at 812-14.

**<u>Response</u>: Agree.**

70. The *Stone Appeal* stated that "although Rockwell did previously plead guilty to violating [RCRA], we are convinced that this plea did not, as the Government contends, preclude the jury from finding that Rockwell engaged in its best efforts and thus that it complied with its obligations under the contract." *Id.* at 814 (footnote omitted).

**Response:** **Agree.**

71. The *Stone Appeal* affirmed the jury verdict and resulting judgment dismissing the government's breach of contract claims with prejudice. *See id.* at 792, 812-15.

**Response:** **Agree.**

THE INSTANT PROCEEDING

72. Defendant filed an Answer to Rockwell's Complaint in November 1991. *See* Ex. 27, Def.'s Answer.

**Response:** **Agree.**

73. Defendant's first amended answer was filed on July 17, 1996. *See* Ex. 23, Def.'s Am. Answer; Ex. 26, Order, at 30.

**Response:** **Agree.**

74. In October 2005, Defendant moved for leave to file a proposed second amended answer. *See* Ex. 30, Def. United States' Mot. and Mem. in Supp. of Mot. for Leave to File a Second Am. Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims; Ex. 33, Def.'s [Proposed] Second Am. Answer.

**Response:** **Agree.**

75. In March 2006, Defendant filed its SAA, which alleged, *inter alia*,

> In March 1992, Rockwell pled guilty to five felony counts and five misdemeanor counts of violating various environmental laws. Rockwell admitted in its plea agreement that its felonious misconduct occurred during the two award fee periods at issue, the same periods of time it alleges that DOE acted improper[ly] by reducing its award fee ratings for poor management and environmental performance.

Ex. 8 ¶ 102.

**Response: Agree.**

Defendant's Affirmative Defense of Special Plea in Fraud

76. Defendant first alleged the special plea in fraud affirmative defense, 28 U.S.C. § 2514, in its first amended answer. *Compare* Ex. 27, Def.'s Answer, *with* Ex. 23, Def.'s Am. Answer, ¶ 41.

**Response: Agree.**

77. In February 1996, Defendant stated that "[t]he elements of common law fraud are identical to those of the Special Plea in Fraud." Ex. 24, Def.'s Reply Mem. in Supp. of Mot. to Stay Proceedings; Def.'s Opp. to Rockwell's Mot. for Pre-Trial Scheduling Order, Feb. 9, 1996, at 2.

**Response: Agree.**

78. In February 1996, Defendant stated, "Thus, victory in Stone would provide the government with a complete defense in this case because, by establishing the elements of its common law fraud claim, it would be establishing the elements of the Special Plea in Fraud." *Id*. at 2.

**Response: Agree.**

79. In December 1996, Defendant stated,

> The amended complaint in Stone will include the alternative legal theory of common law fraud, the elements of which are essentially the same as those for proving the Special Plea in Fraud in this proceeding . . . . The government's claims [in *Stone*] will be pleaded in terms that closely track the amended answer herein.

Ex. 25, Def.'s Renewed Mot. for a Stay of Proceedings, Dec. 13, 1996, at 6 n.6.

**Response: Agree.**

80. Judge Yock stated in a prior order in this case:

> [S]uccess by Mr. Stone under the [FCA] would not be necessarily sufficient to obviate the need for a trial in this case because such success cannot be used to establish a Special Plea in Fraud. The standard of proof for fraud under the False Claims Act is more lenient than the standard under the Special Plea in Fraud, 28 U.S.C. § 2514. In order to obtain a judicial determination in Stone adequate to defeat the plaintiff's claim in this Court, the Government has indicated that it will seek to prove common law fraud in Stone.

Ex. 26, Order, July 17, 1996, at 27-28.

**Response: Agree.**

81. In the SAA, Defendant alleged,

> Plaintiff's claims are barred by the defense of the Special Plea in Fraud, 28 U.S.C. § 2514, inasmuch as plaintiff corruptly practiced and has attempted to practice a fraud against the United States in the proof, statement, establishment, and allowance of its claim. This defense is based upon Rockwell's conduct as proven in Stone.

Ex. 8 ¶ 108.

**Response: Agree.**

82. During a hearing before this Court in January 2005, counsel for Defendant stated,

> But the other argument we have, Your Honor, is that the special plea in fraud is not the same claim as the common law fraud claim[;] . . . the claims

> are really different claims. Some of the elements overlap. Maybe all of the elements overlap, but depending on which case you read. But the claims are different claims, and therefore claim preclusion doesn't apply.

Ex. 34, Tr., Jan. 14, 2005, at 47:6-23.

**Response: Agree.**

83. In the reply brief on its renewed motion to stay proceedings in favor of *Stone*, Defendant stated, "The fact is the cases are intertwined because they involve the same claims, the same facts, and the same witnesses." Ex. 35, Def.'s Reply to Pl.'s Mem. in Opp. to Def.'s Renewed Mot. to Stay Proceedings, Jan. 13, 1997, at 2.

**Response: Agree.**

Defendant's Affirmative Defenses of Estoppel and Prior Material Breach of Contract

84. Defendant alleged an affirmative defense of estoppel in its initial answer. Ex. 27 ¶ 40.

**Response: Agree.**

85. Defendant realleged the estoppel affirmative defense in its first amended answer. Ex. 23 ¶ 40.

**Response: Agree.**

86. Defendant did not include an estoppel affirmative defense in the proposed second amended answer that it sought this Court's leave to file in October 2005. *See* Ex. 33.

**Response: Agree.**

87. Defendant realleged estoppel as an affirmative defense in the SAA. Ex. 8 ¶¶ 105, 106.

**Response: Agree.**

88. Defendant alleged prior material breach of contract as an affirmative defense for the first time in the SAA. *Compare id.* ¶¶ 111, 112 *with* Ex. 27, Def.'s Answer, *and* Ex. 23, Def.'s Am. Answer.

**Response: Agree.**

89. In March 1993, Defendant stated,

> The Government's main defense to Rockwell's claim here is that Rockwell's violations of the environmental laws, and certain misrepresentations that Rockwell made to DOE to cover up its environmental noncompliance, constituted breaches of the Contract, which estop it from recovering against DOE on its theory that the wrong official made the award fee decisions. (See Answer, ¶ 40, asserting affirmative defense of estoppel.)

Ex. 28, Def. United States' Mem. in Opp. to Mot. of Pl. Rockwell International Corporation for a Protective Order, Mar. 31, 1993, at 3.

**Response: Agree.**

90. In April 1994, Defendant stated,

> The Government seeks to defend against Rockwell's claim, inter alia, upon the ground that Rockwell's violations of the environmental laws, and the misrepresentations and material omissions that Rockwell made to DOE to cover up its environmental noncompliance, constituted breaches of the Contract, which estop it from recovering against DOE on its theory that the wrong official made the award fee decisions. (See Answer, ¶ 40, asserting affirmative defense of estoppel.)

Ex. 29, Def. United States' Mot. and Mem. in Supp. of Mot. to Determine the Sufficiency of Pl. Rockwell International Corporation's Objections to Discovery and to Compel Responses, Apr. 18, 1994, at 6.

**Response: Agree.**

91. In October 2005, Defendant moved for leave to file a proposed second amended answer which included a prior material breach of contract affirmative defense. *See* Ex. 30, Def. United States' Mot. and Mem. in Supp. of Mot. for Leave to File a Second Am. Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims; Ex. 33, Def.'s [Proposed] Second Am. Answer, ¶¶ 111, 112.

**<u>Response</u>: Agree.**

92. In seeking leave to add the affirmative defense of prior material breach of contract, Defendant stated,

> In its March 1993 Brief, the Government placed Rockwell on notice that it intended to pursue a defense of this nature. The Government stated:
>
> > Rockwell's violations of the environmental laws, and certain misrepresentations [that] Rockwell made to DOE to cover up its environmental noncompliance, constituted breaches of the Contract, which estop it from recovering against DOE on its theory that the wrong official made the award fee decisions.

Ex. 30, Def. United States' Mot. and Mem. in Supp. of Mot. for Leave to File a Second Am. Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims, at 16-17 (quoting Ex. 28, Def. United States' Mem. in Opp. to Mot. of Pl. Rockwell International Corporation for a Protective Order, at 3).

**<u>Response</u>: Agree.**

93. In its brief in response to Defendant's October 2005 motion for leave to file a second amended answer, Rockwell stated,

> [Defendant's] March 1993 Brief also stated that Defendant's "main defense to Rockwell's claim here is that Rockwell's violations of the environmental laws, and certain misrepresentations that Rockwell made to DOE to cover up its environmental noncompliance, constituted breaches of the Contract, which estop it from recovering against DOE on its theory that the wrong official made the award fee decisions. (See Answer, ¶ 40, asserting

> affirmative defense of estoppel.)." Defendant repeated this description of its estoppel defense in an April 1994 pleading. As such, to the extent Defendant seeks leave to amend its answer to assert an affirmative defense of "prior material breach" consistent with Defendant's prior descriptions of its original estoppel defense, Rockwell offers no objection because that defense has been part of this case since Defendant's November 8, 1991, original Answer.

Ex. 31, Pl.'s Mem. in Opp. to Def.'s Mot. for Leave to File a Second Am. Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims, at 13 n.5 (citations omitted).

**Response: Agree.**

94. This Court granted Defendant leave to amend its answer to add the defense of prior material breach. Ex. 32, Op. and Order, Mar. 10, 2006, at 19.

**Response: Agree.**

95. In the SAA, Defendant alleges,

> Rockwell's claims are barred by Rockwell's prior material breach of the contract. More specifically, Rockwell materially breached its contract with DOE, and its covenant of good faith and honest dealing therein, by reason of Rockwell's knowing submission of false and fraudulent statements and claims during the period April 1, 1987 through September 30, 1988.

Ex. 8 ¶ 112.

**Response: Agree.**

96. The phrase "and its covenant of good faith and honest dealing therein" was not included in the comparable paragraph of the proposed second amended answer which Defendant sought leave to file. *Compare id. with* Ex. 33, Def.'s [Proposed] Second Am. Answer, ¶ 112.

**Response: Agree.**

Rejected Affirmative Defenses of Impossibility, Justification, and Waiver

97. The proposed second amended answer included three new affirmative defenses of impossibility, justification and waiver. *Compare* Ex. 33, Def.'s [Proposed] Second Am. Answer, at 20-21 *with* Ex. 27, Def.'s Answer, *and* Ex. 23, Def.'s Am. Answer.

**Response: Agree.**

98. This Court denied Defendant leave to amend its answer to add the new affirmative defenses of impossibility, justification and waiver. *See* Ex. 32, Op. and Order, Mar. 10, 2006, at 13; *see also id*. at 19; Ex. 30, Def. United States' Mot. and Mem. in Supp. of Mot. for Leave to File a Second Am. Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims, at 17.

**Response: Agree.**

99. In its March 10, 2006, Opinion and Order, the Court stated,

> At the hearing on the pending motions, counsel for the government stated that it considered the newly proffered defenses to be encompassed by the broader defense of estoppel . . . . In this connection, counsel for the government stated that there are no substantive differences between these new defenses it seeks to include in its second amended answer and the manner in which it has already pled its case. The court may doubt this assertion, but there is no reason now to make any advisory ruling on the matter, and thus the government may pursue its theory that estoppel embraces impossibility, justification, and waiver.
>
> Differences in the scope and effect of these defenses are readily apparent.

Ex. 32 at 13-14, 14 n.10 (citations and footnote references omitted).

**Response: Agree.**

100. In its March 10, 2006, Opinion and Order, the Court stated, "the government seeks to add the affirmative defense of waiver because it claims that Rockwell approved the

decision by DOE's headquarters to intervene in the award-fee determination process subsequent to the allegations raised in the criminal investigation." *Id.* at 11.

**Response: Agree.**

101. In its March 10, 2006, Opinion and Order, the Court stated,

> The government's affirmative defenses of impossibility and justification allege that DOE had grounds for removing from the AFDO the authority to determine Rockwell's award fees because of DOE's "good faith belief" that the AFDO had become a focus of the FBI's criminal investigation into Rockwell's activities.

*Id.*

**Response: Agree.**

102. In the SAA, Defendant alleges, "On June 6, 1989, approximately 70 agents of the FBI and EPA served a search warrant on the Rocky Flats Plant." Ex. 8 ¶ 52.

**Response: Agree.**

103. In the SAA, Defendant alleges,

> The search warrant affidavit stated that the FBI and EPA had probable cause to believe, among other things, that DOE field officials may have had involvement with crimes committed by Rockwell, to wit: (1) that Rockwell and DOE officials may have falsely certified that Rocky Flats was in compliance with all applicable groundwater monitoring requirements, (2) that DOE and Rockwell may have repeatedly failed to provide the EPA with complete and accurate waste information and that false statements and concealment of material facts may have occurred, and (3) that DOE and/or Rockwell may have made false statements to, or concealed material facts from, the EPA concerning discharges from Rocky Flats in violation of the Clean Water Act.

*Id.* ¶ 53.

**Response: Agree.**

104. In the SAA, Defendant alleges, "Mr. Twining, the Manager of the ALOO, became concerned that he might be criminally indicted." *Id.* ¶ 54.

**<u>Response</u>: Agree.**

105. In the SAA, Defendant alleges, "DOE Headquarters was concerned that persons in the ALOO, and in particular, Mr. Twining, were potential subjects of the FBI investigation." *Id.* ¶ 55.

**<u>Response</u>: Agree.**

106. *Abraham v. Rockwell International Corporation* states that "[t]he affidavit in support of the [search] warrant included a long list of alleged criminal violations by both Rockwell and its employees. These allegations never ripened into formal criminal charges against either Rockwell or its employees." 326 F.3d 1242, 1245 (Fed. Cir. 2003).

**<u>Response</u>: Agree.**

107. In the SAA, Defendant states,

> On June 6, 1989, Undersecretary of Energy John Tuck . . . ordered . . . the entire Rocky Flats Plant to begin reporting directly to DOE Headquarters rather than to Mr. Twining, the Manager of the ALOO, thereby removing Mr. Twining and the ALOO from substantive oversight responsibility over the Rocky Flats Plant. DOE Headquarters took over those substantive roles and functions.

Ex. 8 ¶ 56.

**<u>Response</u>: Agree.**

108. In the SAA, Defendant alleges, "On June 9, 1989, Undersecretary Tuck designated an interim organization, known as the Rocky Flats Area Office, which would report directly to DOE Headquarters, and not to the ALOO." *Id.* ¶ 59.

**Response:** **Agree.**

109. In the SAA, Defendant alleges,

> On June 15, 1989, Secretary Watkins wrote a letter to Mr. Donald Beall, the Chief Executive Officer (CEO) of Rockwell, and informed him of several serious concerns regarding Rockwell's management and operations of the Rocky Flats Plant. In that letter, he also informed Rockwell that DOE was making management changes regarding the oversight of the Rocky Flats Area Office.

*Id.* ¶ 60.

**Response:** **Agree.**

/ / /

110. In the SAA, Defendant alleges,

> On July 13, 1989, Deputy Secretary Moore informed Rockwell's Mr. Iacobellis that DOE Headquarters was further delaying the pending award fee determination until August 1989, inasmuch as additional time was needed to permit the Tiger Team to prepare a written report. By letter dated July 14, 1989, Deputy Secretary Moore confirmed this conversation.

*Id.* ¶ 65.

**Response: Agree.**

111. In the SAA, Defendant alleges, "Mr. Iacobellis acquiesced in DOE's decision to delay the award fee determination until sometime in August 1989." *Id.* ¶ 66.

**Response: Agree.**

112. In the SAA, Defendant alleges, "On August 9, 1989, Admiral Watkins spoke with Rockwell's CEO, Donald Beall. During that conversation, Admiral Watkins told Mr. Beall that the Rocky Flats Plant Area Office would be reporting directly to DOE Headquarters instead of the ALOO. At the time, CEO Beall did not object to this arrangement." *Id.* ¶ 68.

**Response: Agree.**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

s/ John A. Kolar

JOHN A. KOLAR
DONALD WILLIAMSON
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305-9301
Attorneys for Defendant

Dated: July 27, 2006