**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE BOEING COMPANY, SUCCESSOR-IN-INTEREST TO ROCKWELL INTERNATIONAL CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 91-1362 C<br>(Judge Lettow) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

JOHN A. KOLAR
DONALD WILLIAMSON
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305-9301
Attorneys for Defendant

Dated: September 14, 2006

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . 1

ARGUMENT . . . . . 2

A. Defendant's Non-Breach Theory Is Not "Newly Minted," And Is Reasonable, and Consistent With The Contract's Language, the Evidence, and the Government's Stipulation . . . . . 2

1. The Government's Non-Breach Theory Is Not "Newly Minted" . . . . . 2

2. The Government's Non-Breach Theory is Reasonable, and Consistent With The Contract's Language, the Evidence, and the Government's Stipulation . . . . . 3

B. The Award Fee Amounts Paid to Rockwell Were Entirely Within the Government's Discretion and Not Reviewable by the Court . . . . . 12

C. Rockwell Suffered No Legally Cognizable Damages Even If DOE Breached the Contract . . . . . 13

D. The Government's Defense of Waiver Is Encompassed by Estoppel and, Therefore, Is Not Barred; The Summary Judgment Proof Submitted By the Government Establishes That Rockwell Waived Its Purported Right to Have Field Officials Determine its Award Fees . . . . . 15

CONCLUSION . . . . . 17

## TABLE OF AUTHORITIES

Page

Cases:

*AFSCME, Council 4, Local 704 v. Department of Public Health*,
866 A.2d 582 (Conn. 2005) . . . . . . . . . . 15

*Burnside-Ott Aviation Training Center v. Dalton*,
107 F.3d 854 (Fed. Cir. 1997) . . . . . . . . . . 12, 13

*George Sollitt Constr. Co. v. United States*,
64 Fed. Cl. 229 (2005) . . . . . . . . . . 12, 13

*Helix Elec., Inc. v. United States*,
68 Fed.Cl. 571 (Fed. Cl. 2005) . . . . . . . . . . 7

*Kline v. San Francisco Unified School Dist.*,
104 P.2d 661 (Cal. App. 1940) . . . . . . . . . . 16

*Manson Constr. Co. v. United States*,
64 Fed. Cl. 746 (Fed. Cl. 2005) . . . . . . . . . . 7

*Moncel Realty Corp. v. Whitestone Farms*,
68 N.Y.S.2d 673 (N.Y. Sup. 1947) . . . . . . . . . . 15

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*,
376 F.3d 664, 679 (7th Cir. 2004) . . . . . . . . . . 17

**Other:**

*Blacks Law Dictionary* (8th ed.2004) . . . . . . . . . . 3-4

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE BOEING COMPANY, SUCCESSOR-IN-INTEREST TO ROCKWELL INTERNATIONAL CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 91-1362 C (Judge Lettow) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The Government submits this memorandum in reply to plaintiff The Boeing Company, Successor-In-Interest To Rockwell International Corporation's ("Rockwell") Memorandum In Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment And In Opposition To Defendant's Cross-Motion For Summary Judgment, served on August 28, 2006 ("Rockwell's Reply").

## I. PRELIMINARY STATEMENT

There is no genuine issue of material fact, and the Government is entitled to a judgment as a matter of law that it did not breach the contract. Accordingly, the Court should enter summary judgment denying Rockwell's claim. Alternatively, the Court should enter summary judgment for the Government on the grounds that (1) the amounts of the award fees paid to Rockwell were entirely within the Government's discretion and cannot be reviewed by the Court; (2) Rockwell suffered no legally cognizable damages even if DOE breached the contract; and or (3) the Government should be permitted to assert the affirmative defense of waiver

inasmuch as it is encompassed by estoppel, and the uncontroverted facts establish waiver as a matter of law.

In the event the Court declines to enter summary judgment for the Government, the Court should deny Rockwell's motion for summary judgment since the issues of fact underlying Rockwell's motion are subject to genuine dispute, and Rockwell is not entitled to judgment as a matter of law.

## II. ARGUMENT

### A. Defendant's Non-Breach Theory Is Not "Newly Minted," And Is Reasonable, and Consistent With The Contract's Language, the Evidence, and the Government's Stipulation

#### 1. The Government's Non-Breach Theory Is Not "Newly Minted"

The Government's defense that the contract permitted DOE Headquarters to act as the AFDO is not "newly minted." Rockwell's Reply at 2. Rockwell has long been on notice that the Government intended to defend this case on precisely this ground, among others. In a legal memorandum which the Government filed on April 28, 1994, the Government argued that the contract merely required that the award fee be determined by a "Contracting Officer,"[1] and that "that term is defined [in the contract] in such a manner as to include a class of DOE officials arguably including then Secretary of Energy James D. Watkins and other high-level DOE headquarters officials." Indeed, the Court granted the Government leave to conduct the depositions of Mr. Beall and Mr. Iacobellis,[2] based on the Government's argument that these

[1] See Defendant United States' Memorandum In Opposition To Motion Of Plaintiff Rockwell International Corporation For A Protective Order And Motion For Leave To Take The Contested Depositions Outside Of The Court-Ordered Discovery Period, filed April 28, 1994, at 2-8, Defendant's Supplemental Exhibit ("Def. Supp. Ex.") 50 submitted herewith.

[2] See Court Order filed May 24, 1994, Def. Supp. Ex. 51.

depositions would demonstrate Rockwell's contemporaneous understanding that the contract permitted award fee determinations by Secretary Watkins and Headquarters officials.

### 2. The Government's Non-Breach Theory is Reasonable, and Consistent With The Contract's Language, the Evidence, and the Government's Stipulation

The parties apparently agree that the contract allowed someone other than Mr. Twining to act as the AFDO. Rockwell admits that if the position of Manager became "vacant" due to Manager Twining's "disability," "the individual performing the Manager's duties (*i.e.*, "acting as Manager, Albuquerque Operations") [could] serve as the AFDO." Rockwell's Reply at 4. Rockwell's Reply at 7-8. Rockwell only takes issue with the Government's position that the contract permitted the Secretary to withdraw *de facto* Mr. Twining's authority to decide Rockwell's award fee, while leaving him in the position of Manager with jurisdiction over other contractors. Rockwell acknowledges that DOE could properly have designated someone other than Mr. Twining as AFDO, but says that DOE could only do so if it "chang[ed] the occupant of the position of Manager of Albuquerque Operations." Id. Rockwell's interpretation is incorrect.

First, Rockwell argues that, in identifying the AFDO as the "Manager or anyone acting as Manager, Albuquerque Operations," see Pl. Ex. 3 at 2 (clause 62(b)(1)), the contract means the Manager or someone formally named to the position of "Acting Manager" who fills the Manager's position on an interim basis due to a vacancy in the Manager's position. Rockwell's Reply at 4-5, n. 2. In support of this argument, Rockwell cites Black's Law Dictionary's definition of "acting" when used it is used in the phrase "acting director." Black's Law Dictionary (8th ed. 2004) defines "acting" when used **adjectivally** as "[h]olding an interim position; serving temporarily." Id. However, in the phrase in question, the contract does not use "acting" as an adjective.

The key phrase in the contract uses "acting" not as an adjective, but as a verb, specifically a present participle. It permits the award fee to be decided by the "Manager or **anyone acting as Manager**" (emphasis added). This means that the award fee may be determined by **anyone actually performing the function of the Manager** with respect to the relevant subject matter, whether or not that individual had been formally given the nominal title of "Acting Manager." The test is functional, not formal.[3] The contract clearly does not specify that the award fee may only be determined by the "Manager or **Acting Manager**, Albuquerque Operations," which is the terminology that would have been used if the parties had intended to limit the award fee decision to the Manager or an officially appointed "Acting Manager" of Albuquerque Operations. Thus, the language actually employed by the parties in the contract is inconsistent with Rockwell's cramped interpretation.

Secretary Watkins's actions in this case were in keeping with the plain meaning of the contract language. Secretary Watkins deemed Manager Twining to be "disabled" from overseeing Rockwell, including determining its award fee, due to Mr. Twining's status as a potential "party" to the criminal investigation. Accordingly, Secretary Watkins withdrew Mr. Twining's substantive authority over Rockwell and designated others–*i.e.,* DOE Headquarters and Mr. Ed Goldberg, Headquarters' representative at the Rocky Flats site--to perform that function, although the Secretary left intact Mr. Twining's title and his authority over other contractors under his jurisdiction. Thereafter, Mr. Twining ceased to function as the Manager **within the terms of the contract with Rockwell**. In place of Mr. Twining, Headquarters officials commenced "acting as the Manager" of Albuquerque Operations" for purposes of

[3] For the same reason, Rockwell's citation of DOE regulations on the interim appointments of "acting" officials to fill vacant positions is inapposite.

Rockwell and Rocky Flats.[4] Under the language of the contract, those officials were permitted to decide Rockwell's award fee.

Second, Rockwell's interpretation is unreasonable because it is predicated on the notion that the Secretary was required to take an "all or nothing" approach to displacing officials who became unable to perform one of their functions, but were perfectly capable of continuing to perform other functions. In this case, Secretary Watkins was responding to a situation in which DOE's Albuquerque Operations officials, including Mr. Twining, were suspected of possible misconduct with respect to Rocky Flats and Rockwell only. Mr. Twining was not suspected of misconduct in regard to any of the other facilities and contractors under his jurisdiction. Secretary Watkins tailored his corrective action to this relatively narrow concern: he removed Mr. Twining's substantive authority over the Rocky Flats facility and over its operator, Rockwell, while leaving intact the rest of his authority. This was a reasonable response, and the Government's reading of the pertinent contract language, which would construe the contract as leaving room for the Secretary to take such action, is the more reasonable reading.

Rockwell next asserts that the Government's reading of the contract is unreasonable and contrary to the parties' intent because it is overly broad. According to Rockwell, the Government's reading would "permit[] any number of persons in addition to the Albuquerque Operations Manager, regardless of their 'on-the-ground knowledge of Rockwell's performance,' to qualify and serve as AFDO at the Secretary's discretion." Rockwell's Reply at 6-8. As noted

---

[4] Rockwell acknowledges the substance of many of the pertinent facts supporting the Government's contentions in its Responses To Defendant's Proposed Findings Of Uncontroverted Fact ("Rockwell's Resp. To DPFUF"), although it sometimes quibbles with the Government's specific formulation of the proposed findings. See, e.g., Rockwell's Resp. To DPFUF, ¶¶ 27-29 and 32-34.

in the Government's Opp. Memo., the language of the contract was open-ended, and literally indicated that any duly designated contracting officer(s) acting in the function of Manager of Albuquerque could determine the award fee. Government's Opp. Memo. at 19 (emphasis added)

The contract's use of the term "anyone," considered together with the statute and regulations granting the Secretary plenary authority over the appointment of subordinate Department officers and over its contracting activities,[5] means that the Secretary possessed the discretion to designate any DOE contracting officer he deemed appropriate to perform the function of Manager of Albuquerque for all purposes or for a single, more limited purpose (such as, in this case, overseeing Rockwell and Rocky Flats only).

Rockwell misperceives the contract's references to the AFDO and contracting officer as somehow altering the Secretary's congressionally conferred authority to administer the Department of Energy. The contract did not purport to impose qualification requirements on the Government employees who the Secretary may appoint to carry out the Government's responsibilities under the contract. The establishment of such qualification requirements is solely within the discretion of the Secretary. Rockwell asks this Court to read the AFDO provision as impliedly limiting the Secretary's discretion in this regard. This is particularly unreasonable and legally incorrect, where, as here, the contract was executed for DOE by a subordinate Contracting Officer (who received his authority not from Congress directly, but from a chain of delegations from the Secretary–see Government's Opp. Memo. at 21) and

[5] The statute and regulations are set forth at pages 20-21 of the Government's Opp. Memo.

contains no clear language that even attempts to limit the Secretary's authority.[6] Rockwell's interpretation is inconsistent with the statute and regulation and therefore improper. *See Manson Constr. Co. v. United States*, 64 Fed. Cl. 746, 751 (Fed. Cl. 2005) (court declined to adopt an interpretation of a statute which would infringe upon an agency's ability to exercise its discretion–established by other regulations--in determining the price reasonableness of bids). *See also Helix Elec., Inc. v. United States*, 68 Fed.Cl. 571, 585-86 (Fed. Cl. 2005) (contractor's interpretation of a contract was "untenable" because it was inconsistent with statutes and regulations governing the subject matter).

That being said, as it happened, the individuals whom the Secretary charged with deciding Rockwell's award fee in Mr. Twining's place did possess full "on-the-ground" knowledge of Rockwell's performance, and therefore Rockwell cannot reasonably argue that it was deprived of the benefit of that for which it claims it bargained. The Government has submitted evidence that the DOE Headquarters officials who were involved in the determinations at issue here were more informed, not less so, than Mr. Twining, regarding Rockwell's performance. This evidence stands uncontroverted by Rockwell (see further below).

The Government agrees with Rockwell that the parties' contemporaneous construction of the contract, before it became a subject of dispute, is entitled to great weight in its interpretation. Rockwell's Reply at 11, citations omitted. Here, the uncontroverted facts demonstrate that Rockwell agreed with DOE's contemporaneous construction of the contract as permitting the

---

[6] As explained in the Government's Opp. Memo. At 17-19, this contract is unlike the contracts involved in the cases cited by Rockwell. This contract did not explicitly and expressly single out one and only one Government official by name or by title and purport to limit decision making to that single official, but, rather explicitly and expressly provided that any Contracting Officer acting as Manager of Albuquerque could serve as the AFDO.

Secretary of Energy and DOE Headquarters to take over the role of AFDO once Mr. Twining was disqualified. This is demonstrated by the acquiescence of Rockwell's highest corporate officers, Mr. Beall and Mr. Iacobellis, in DOE Headquarters' role in determining Rockwell's award fees, ample evidence of which was presented in the exhibits to the Government's Opp. Memo. See, e.g., Exs. 38-49.

Next, Rockwell asserts that "the record is devoid of any proof that the Secretary removed Mr. Twining from the position of AFDO and transferred that role to himself or others." Rockwell's Reply at 12. Rockwell argues that there are no documents formally identifying Headquarters officials as the AFDO. Rockwell further contends that contemporaneous documents indicate that Mr. Twining and Headquarters continued to treat Mr. Twining as AFDO. Id.

To the contrary, the record is replete with evidence that the Secretary removed Mr. Twining's substantive role of deciding Rockwell's award fees (although he did not remove his title as Manager or his authority over other plants) and vested that authority in himself and others of his choosing. See, e.g., Def. Ex. 11, pp. 14-15, 65, 96, and 100; Ex. 10, pp. 33-35, 67-68, 133-134, 138; Ex. 16, p. 272; Ex. 17, pp. 27-29; Ex. 18; Ex. 22, pp. 36-37; Ex. 31, pp. 41-43; Ex. 40; Ex. 43; Ex. 46; and Ex. 49. At another point in its reply, Rockwell appears to concede as much when it agrees that "[a]fter Secretary Watkins 'was briefed on the contents of the search warrant affidavit,' he 'removed Mr. Twining from substantive oversight responsibility' of Rocky Flats, including Mr. Twining's contractual obligation to determine Rockwell's award fees." Rockwell's Reply at 19. The fact that Mr. Twining was removed *de facto* as AFDO, such that there is no memorandum stating this fact explicitly, is of no moment inasmuch as the contract

language refers to functions, rather than titles, in identifying the officials who may properly determine award fees.

Rockwell argues that "[t]he Stipulation belies the government's current interpretation" of the contract. Rockwell's Reply at 10. Specifically, Rockwell argues that the Stipulation bars the Government's interpretation because it refers to the Manager of Albuquerque Operations during the 89/1 period, and the Manager of the Rocky Flats Office during the 89/2 period, as "the AFDO." Therefore, says Rockwell, the Government may not now argue that someone else (*i.e.*, Secretary Watkins and/or DOE Headquarters) became the AFDO *de facto* and could decide the award fees. However, a careful review of the Stipulation, and the context within which it employed the term "AFDO," shows that this usage was incidental and was never intended as a substantive admission regarding who could act as the AFDO, and who could not.

The Stipulation starts off:

> 1. In May 1989, the Department of Energy's ("DOE's") Manager of Albuquerque Operations (the Award Fee Determination Official or "AFDO") concluded that Rockwell International Corporation's ("Rockwell's") award fee for Plant Operations . . . for the 89/1 period should be $5,176,482 and forwarded his conclusion to DOE headquarters for concurrence.

See Pl. Ex. 5, Stipulation, ¶ 1. From that point on, the Stipulation uses the term "AFDO" as a short-hand abbreviation for the Manager of Albuquerque Operations, or, in the case of paragraphs 9-12, as short-hand for "DOE's Manager of the Rocky Flats Office." See Pl. Ex. 5, Stipulation, ¶ 9. The use of the term "AFDO" in these paragraphs conveys the same meaning as would have been expressed, had the parties used the longer phrasing "Manager of Albuquerque Operations" in every place where "AFDO" is mentioned from paragraph 2 through paragraph 8, and the term "Manager of the Rocky Flats Office" in every spot where "AFDO" is used in

paragraph 9 through paragraph 12. If the parties had used the longer titles, instead of the short-hand abbreviation "AFDO," it would be clear that the Stipulation was never intended to constitute an admission by the Government that only the two Managers, and not DOE Headquarters, could exercise the function of AFDO consistently with the terms of the contract.

The Government entered into the Stipulation because it did not intend to contest the facts that (a) DOE Headquarters, and not the field officials, determined the award fees in question; and (b) in so doing, DOE Headquarters overrode "conclusions" the field officials had reached based upon imperfect knowledge of Rockwell's performance. The Government never intended that the Stipulation should speak to the issue of contract interpretation, or bind the Government from arguing that its actions were proper as a matter of law. Nothing in the Stipulation purports to address the contract interpretation issue or preclude the Government's legal argument.

Rockwell further complains that the Government is "run[ning] away from" the Stipulation by using the term "recommendations" to describe the actions of Mr. Twining (and Mr. Simonson during the 89/2 period) regarding award fees. Rockwell insists that the field officials' actions were "determinations," Rockwell's Reply at 10, n. 5, and, therefore, that they form a proper basis for the calculation of damages. Id. at 14 ("Rockwell seeks damages measured by the AFDO's award fee determinations.").

Rockwell notes that its counsel rejected the insertion of the term "recommendation" into the Stipulation. However, the term "determination" is not used in the Stipulation either. The Stipulation states that the field officials "concluded" what they thought Rockwell's award fees should be. It further states that the field officials "forwarded [their] conclusion[s] to DOE headquarters for concurrence," Pl. Ex. 5, Stipulation, §§ 1 and 9, thereby plainly indicating an acknowledgment by Rockwell that those actions were merely interim conclusions that never

became final determinations. Thus, Rockwell's quibble with the Government's use of the term "recommendations" to refer to the field officials' actions is semantics. The record is clear that the field officials never entered final determinations.

Finally, the Government's "assertions about Mr. Twining" are not "an attempt to resurrect the proposed impossibility/justification defense this Court denied the government leave to assert . . . ." Rockwell's Reply at 13. The Government does not raise these points by way of an affirmative defense. The Government certainly does not concede that it breached the contract but was justified in doing so, or that it was legally impossible for the Government not to breach. Rather, the Government's assertions about Mr. Twining are part of the Government's defense that it did not breach the contract. The Government is arguing that the contract language permitted a DOE contracting officer other than the Manager to function as AFDO (as long as he or she was the functional equivalent to the Manager with respect to knowledge of Rockwell's performance), where, as here, the individual holding the Manager title was disabled from deciding the award fee due to a conflict of interest or a lack of impartiality.

For these reasons, and those explained in the Government's Opp. Memo., the Court should grant summary judgment that the Government did not breach the contract.

B. The Award Fee Amounts Paid to Rockwell Were Entirely Within the Government's Discretion and Not Reviewable by the Court

Rockwell argues that the Court does have power to review the award fee decisions by DOE notwithstanding the precedents cited by the Government--*George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 305 (2005) and *Burnside-Ott Aviation Training Center v. Dalton*, 107 F.3d 854, 859-60 (Fed. Cir. 1997)–holding otherwise.

Rockwell argues, first, that it "is not challenging the AFDO's award fee determinations in either of the award fee periods at issue. Rather, Rockwell seeks damages measured by the AFDO's award fee determinations." Rockwell's Reply at 14. By "AFDO's" in this passage, Rockwell means Mr. Twining for the 89/1 award fee period, and Mr. Simonson for the 89/2 period. However, as already explained, the conclusions reached by these two field officials never became "determinations." The only "determinations" present on the record of this case were the award fee decisions by DOE Headquarters.

Second, Rockwell attempts to distinguish this case from *George Sollitt Constr. Co.* and *Burnside-Ott* by arguing that this case, unlike those, involves "DOE's breach of an explicit contractual requirement" Rockwell's Reply at 16, n. 9, "to wit, that award fees be determined by the AFDO, the Manager, Albuquerque Operations." Rockwell's Reply at 15.[7] Obviously, though, Rockwell will not be satisfied with an adjudication simply finding that the wrong official decided the award fee. What Rockwell really seeks is an adjudication that **Rockwell was due award fees for the two periods in question that were higher than it was actually paid.**

But the question of the amount of an award fee paid a contractor under a contract committing that decision to the Government's discretion is precisely the issue that *George Sollitt Constr. Co.* and *Burnside-Ott* hold that the Court may not review (in the absence of an allegation that the agency abused its discretion, which Rockwell has not alleged–see the Government's Opp. Memo. at 3, n. 1). Even if, theoretically, the Court has authority to rule that DOE deviated

---

[7] Rockwell states that "[t]he contract required that several procedures be followed in determining award fees." Rockwell's Reply at 14. But Rockwell goes on to clarify that its "claims arise [solely] from DOE's [alleged] breach of one of those contractual requirements, to wit, that award fees be determined by the AFDO, the Manager, Albuquerque Operations." Rockwell's Reply at 15.

from the procedure it should have followed in determining Rockwell's award fees, the Court lacks authority to substitute its judgment about what award fees Rockwell should have received for the discretionary determinations made by DOE Headquarters officials.

The Court should enter summary judgment for the Government on the ground that it lacks the authority to overrule DOE's discretionary determinations of Rockwell's award fees where, as here, Rockwell has not alleged an abuse of discretion.

C. Rockwell Suffered No Legally Cognizable Damages Even If DOE Breached the Contract

The Government's Opp. Memo. argues that Rockwell suffered no legally cognizable damages because, even though DOE Headquarters determined its award fees, those officials were as fully informed, or even more informed, about Rockwell's performance as the field officials whom Rockwell says were required to make the decisions.

Rockwell presents no evidence to counter the Government's proof that DOE Headquarters officials were as fully informed as field officials regarding Rockwell's performance. The only information Rockwell manages to muster that remotely relates to this proposition is its citation to testimony by Admiral Watkins that "I didn't know an award fee from the man in the moon when I got [to DOE]." Rockwell's Reply at 21, n. 13. As amply demonstrated in the Government's Opp. Memo. and the exhibits submitted therewith, after Admiral Watkins got to DOE, he and other Headquarters officials made a very concerted, and successful, effort to fully inform themselves about Rockwell's performance, and based their award fee determinations on that information.

Rockwell also asserts that "[i]n the process actually employed, Rockwell's award fees were "mandated" and "determined" by DOE headquarters in Washington, D.C., by persons

following their own agenda and reacting to a highly publicized and politically-charged investigation founded on 'baseless' and 'discredited' allegations." Rockwell's Reply at 21. It sounds as though Rockwell is attempting to constructively amend its complaint to add an allegation that DOE Headquarters officials acted arbitrarily and capriciously.

As pointed out in the Government's Opp. Memo. at 3, n. 1, Rockwell did not allege in its complaint that DOE Headquarters officials acted arbitrarily and capriciously regarding the amounts of award fees they decided to pay Rockwell. Rockwell should not be permitted to amend its complaint at this late date to add such a claim, especially in view of the Court's refusal to allow the Government to amend its affirmative defenses. Accordingly, the Court should not even entertain Rockwell's suggestion that DOE officials were motivated by "political" or otherwise inappropriate considerations.

That being said, we further note that Rockwell does not proffer a scintilla of evidence to support an assertion that Headquarters' motivations were improper. Instead, Rockwell lists a litany of immaterial "facts" in an attempt to distract from its failure to discredit the actual award fee decision-making process carried out by Headquarters. For example, Rockwell notes that the search warrant allegations which triggered the raid were wrong. Rockwell's Reply at 20. So what. Rockwell asserts that all of DOE's facilities had environmental problems, and DOE Tiger Teams sent to other facilities also found violations. Id. So what. None of these points disprove the Government's contention that DOE Headquarters' award fee determinations were based upon full "on-the-ground" knowledge regarding Rockwell's performance.

The Government's contention that Headquarters' award fee determinations were based upon a full, fair, and fully informed assessment of Rockwell's performance stands unchallenged by any opposing proof. Consequently, the Court should hold that Rockwell suffered no legally

cognizable damages by reason of the fact that it was Headquarters that made the award fee determinations.

D. The Government's Defense of Waiver Is Encompassed by Estoppel and, Therefore, Is Not Barred; The Summary Judgment Proof Submitted By the Government Establishes That Rockwell Waived Its Purported Right to Have Field Officials Determine its Award Fees

The term "estoppel" as a matter of law does encompass waiver. "A waiver is in the nature of an estoppel . . . [they] have some elements in common, are maintained on similar principles, and generally the relief asked under each doctrine is the same, i.e., preclusion . . . '[w]aiver belongs to the family of 'estoppel.''" *Moncel Realty Corp. v. Whitestone Farms*, 68 N.Y.S.2d 673, 677 (N.Y. Sup. 1947). "Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced." *AFSCME, Council 4, Local 704 v. Department of Public Health*, 866 A.2d 582, 585 (Conn. 2005). "Estoppel is a species of waiver and where a public official may not waive a public right he cannot be estopped from asserting that right on the part of the general public." *See also Kline v. San Francisco Unified School Dist.,* 104 P.2d 661, 663 (Cal. App. 1940). Therefore, the Government's waiver defense is not barred under the Court's earlier order. And, the summary judgment proof submitted by the Government in the exhibits to the Government's Opp. Memo. establishes waiver as a matter of law.

Rockwell essentially admits that it acquiesced in DOE Headquarter's post-raid decisions to assume direct oversight over, and require management changes, at Rocky Flats, and to delay the **timing** of the award fee decision, Rockwell's Reply at 28, but argues that it never acquiesced in Headquarters' action of actually **determining** the award fees. The uncontroverted proof submitted by the Government belies this assertion. DOE placed Rockwell clearly on notice that

it was "the Department" and "the Secretary," to wit Headquarters officials, not Mr. Twining, who were actually deliberating over what its award fees should be.

To take but one example, Def. Ex. 42 is a letter dated June 20, 1989 from W. Henson Moore, DOE's Deputy Secretary, to Mr. Sam Iacobellis, Rockwell's then President, Aerospace Operations. In this letter, Mr. Moore advised Mr. Iacobellis (emphasis added):

> This letter will confirm our conversation of last week regarding the status of **the Department's determination** of Rockwell's award fee for the most recent completed evaluation period . . .
>
> As I mentioned during our conversation, the final determination has been suspended pending receipt **by the Secretary** of the report of the special departmental team that he dispatched to Rocky Flats. I anticipate that this report will have been rendered in sufficient time so that **the Department may make its determination of Rockwell's award fee** in approximately two to three weeks.
>
> I am sure you appreciate **our need to review this matter with care**, and **the Department will make its determination** as promptly as possible.

"[O]ur need to review this matter with care" clearly meant that Secretary Watkins, Deputy Secretary Moore, and other Headquarters officials were reviewing "this matter," *i.e.*, the award fee determination, with care.

Having been fairly and fully informed that DOE Headquarters was going to decide the award fee, Rockwell's failure to object was "wholly inconsistent" with its purported contract right to have the decision made by field officials, and "indicat[ed] its intent to abandon the [purported] contractual right." Rockwell's Reply at 28, *citing Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 679 (7th Cir. 2004). Rockwell's conduct constituted a waiver of this right, and the Court should enter summary judgment for the Government on that ground.

## III. CONCLUSION

For the foregoing reasons, and those set forth in the Government's Opp. Memo., the Court should enter summary judgment for the Government. Alternatively, the Court should deny Rockwell's motion for summary judgment inasmuch as Rockwell has not demonstrated an absence of genuine issues of material fact and that it is entitled to judgment as a matter of law.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

s/ John A. Kolar

JOHN A. KOLAR
DONALD WILLIAMSON
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305-9301
Attorneys for Defendant

Dated: September 14, 2006

# Exhibit 50

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
APR 28 1994
U. S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION, Plaintiff, | ) | |
| v. | ) | No. 91-1362C (Judge Yock) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION OF PLAINTIFF ROCKWELL INTERNATIONAL CORPORATION FOR A PROTECTIVE ORDER AND MOTION FOR LEAVE TO TAKE THE CONTESTED DEPOSITIONS OUTSIDE OF THE COURT-ORDERED DISCOVERY PERIOD

Defendant opposes plaintiff Rockwell International Corporation's ("Rockwell") Motion For A Protective Order, dated April 18, 1994. The matters into which defendant will inquire in the depositions of Donald R. Beall, Rockwell's Chairman of the Board and Chief Executive Office, and Sam F. Iacobellis, Rockwell's Executive Vice President and Deputy for Major Programs, are "relevant to the subject matter involved in the pending action . . . [and/or] appear reasonably calculated to lead to the discovery of admissible evidence," and, therefore, are permissible and proper under RCFC 26(b)(1). Indeed, their testimony will bear directly upon the key issue in this proceeding: the proper interpretation of the contract provision regarding the Department of Energy ("DOE") official or officials authorized to make the award fee determination. It is for this reason that the Government has noticed the depositions of these two Rockwell officials, not in order to "harass Rockwell and waste the time of its top officers," as Rockwell asserts in its Memorandum in Support (at 4-5). Accor-

dingly, the Court should deny Rockwell's protective order motion.

Assuming that the Court does deny Rockwell's motion, defendant moves for leave to take these depositions outside the discovery period ending May 1, 1994.

## I. Opposition To Motion For A Protective Order

### A. The Depositions Of Beall And Iacobellis Are Relevant Both To The Issues Rockwell Has Raised In The Complaint And To The Government's Defenses

Rockwell filed this action to recover alleged breach of contract damages under Contract DE-AC04-76DP03533 ("the Contract") with the DOE for the operation of the Rocky Flats nuclear weapons plant near Denver, Colorado. Rockwell managed the plant for DOE from 1975 to December 31, 1989, pursuant to the Contract and its modifications. The Contract was a cost plus award fee type. DOE paid all of the costs, and determined the award fee to be paid Rockwell for its management efforts on a semi-annual basis. (See, e.g., Complaint, ¶ 13.)

Rockwell contends that, during fiscal year 1989, officials in DOE headquarters in Washington, D.C. "improperly influenced or coerced" DOE field officials in the Albuquerque, New Mexico Operations Office [ALOO] and the Rocky Flats Office [RFO] to reduce its award fees (Complaint, ¶¶ 13, 26-28, 31, 35), and thereby breached the Contract. Rockwell seeks to recover the award fees it alleges it lost when DOE headquarters officials intervened in the award fee decision.

Rockwell avers that, under the Contract, the award fee was required to be the "subjective determination" of the Manager of

ALOO, but that, during the two semi-annual award fee periods (10/1/88-3/31/89 and 4/1/89-9/30/89) in question, it was not. (Complaint, ¶¶ 12 and 13.) Rockwell argues that a single individual, the Manager of ALOO, was the one and only person in DOE who was permitted to decide the award fee. This is a question of contract interpretation.

Clause 54, entitled "Allowable Costs, Base Fee and Award Fee," of Modification M087 of the Contract, effective January 1, 1986, a copy of which is attached as Exhibit A, provided in pertinent part:

> (a) Compensation for Contractor's Services. Payment for the allowable costs as hereinafter defined and of the base fee and so much, if any, of the award fee **as may be determined by the Contracting Officer** . . . shall constitute full and complete compensation for the performance of the work and furnishing of services under the this contract. [Emphasis added.]

Clause 1 of Modification M087 defines the Contract defines the "Contracting Officer" as

> a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings.

The subsection of Clause 54 upon which Rockwell relies in arguing that the Manager of ALOO was the single individual permitted under the Contract to decide the award fee states:

> (b) (1) Base Fee and Award Fee. The amount of the award fee actually to be paid to the Contractor shall be determined by the **Award Fee Determination Official (Manager, or anyone acting as Manager, Albuquerque Operations) . . . .**

[Emphasis added.][1]

Thus, Clause 54(a) states that the award fee decision is to be made by the Contracting Officer, and that term is defined in such a manner as to include a class of DOE officials arguably including then Secretary of Energy James D. Watkins and other high-level DOE headquarters officials. Clause 54(b)(1) states that the award fee is to be determined by the AFDO, defined as the Manager of ALOO, or "anyone acting as the Manager [of ALOO]." The meaning of these contract provisions - which are key to Rockwell's claim in this case - is subject to interpretation.

It is well-established that, in construing the terms of a contract, "the parties' intent must be gathered from the instrument as a whole." Kenneth Reed Construction Corp. v. United States, 201 Ct. Cl. 282, 288, 475 F.2d 583, 586 (1973). Moreover, in determining intent, the parties' contemporaneous interpretation of a contract, before any dispute has arisen, is entitled to great weight. Lear-Sigler Management Serv. Corp. v. United States, 867 F.2d 600, 603 (Fed. Cir. 1989); Truong Xuan Truc v. United States, 212 Ct.Cl. 51 (1976); Petrofsky v. United States, 203 Ct.Cl. 347, 488 F.2d 1394 (1973); Inland Empire Builders, Inc. v. United States, 191 Ct.Cl. 742, 424 F.2d 1370 (1970). The actions and statements of Rockwell's top executive officials, Beall and Iacobellis, during the period just prior to the time when this dispute arose, bear directly on the interpretation of the key

[1] Language similar to that found in Clause 54(b)(1) is also found in Appendix D entitled "Award Fee Plan."

provisions of the Contract.

By way of background, on May 31, 1989, the Manager of ALOO sent DOE headquarters his award fee recommendations for the period October 1, 1988 through March 31, 1989 for various contractors under his supervision including Rockwell. Within a couple of days, Troy E. Wade, II, the Acting Assistant Secretary for Defense Programs (whom Rockwell is deposing this week), who was aware that the FBI planned to raid the Rocky Flats Plant on June 6, 1989, held up the Rockwell award fee determination. (See Exhibit B, p. 5.) The determination of Rockwell's award fee was subsequently taken under advisement by DOE headquarters officials, and the decision was not issued until late September, 1989. (See Exhibit C.)

During the interim, Beall and Iacobellis had numerous conversations with Secretary Watkins and Deputy Secretary W. Henson Moore about a wide range of contract issues including Rockwell's award fee. In mid-June 1989, shortly after the FBI raid, Iacobellis and Moore had a conversation "regarding the status of the Department's determination of Rockwell's award fee for the most recent completed evaluation period [October 1, 1988 through March 31, 1989] . . . ." Moore informed Iacobellis that "the final determination has been suspended pending receipt by the Secretary of the report by the special department team that he dispatched to Rocky Flats." Moore added: "I am sure you understand our need to review this matter with care, and the Department will make its determination as promptly as possible." (See June 20, 1989 letter from Moore to Iacobellis attached as Exhibit D hereto.)

On August 17, 1989, Iacobellis initiated contact with Moore to raise certain concerns by Rockwell about the exposure of Rockwell employees to criminal liability for violations of the environmental laws at the Rocky Flats Plant. (See Exhibit E.) In Moore's response of August 28, 1989, Moore advised Iacobellis that Rockwell's best course of action would be to operate the Plant in compliance with the environmental laws as required by the Contract. Moore stated: "We fully expect that all actions will be taken to bring the operations of Rocky Flats into full compliance as quickly as possible. We will be working with you to achieve this objective." (See Exhibit F.)

On September 6, 1989, Beall wrote to Secretary Watkins reiterating Rockwell's position that it intended to suspend operations at Rocky Flats unless Rockwell received immunity from prosecution. (See Exhibit G.) On September 18, 1989, Beall initiated a phone call to Secretary Watkins. Beall alluded to a September 15 conversation in which Secretary Watkins had responded to Rockwell's threat to suspend operations by stating that "DOE might terminate the contract if Rockwell stopped operations." Beall advised Watkins that Rockwell intended to continue with operations for the time being. Watkins stated that DOE might replace Rockwell as the contractor "[i]f Beall could not keep his eye on the Rocky Flats operations . . . ." (See Exhibit H.)

On September 20, 1989, Watkins wrote to Beall informing him that "[a]fter [a] thorough review, the Department has concluded that an award fee that reflects approximately 40% of the total

possible award fee is the proper determination . . . . Accordingly, Rockwell will, in the near future, be advised of the particulars of the award fee determination of the Department by the appropriate contracting officer, as is the normal procedure." (See Exhibit C.)

This course of dealing between the highest officials of Rockwell and the highest officials of DOE reflects the parties' contemporaneous interpretation of the Contract provisions upon which Rockwell's claim turns. Indeed, the fact that some of these contacts were initiated by Beall and Iacobellis is in itself significant with respect to the issue of whether the Contract should be interpreted such that only lower echelon DOE officials were allowed to make the award fee determination. Thus, the information possessed by Beall and Iacobellis bears directly upon the central issue in this case, and their depositions are clearly authorized under RCFC 26(b)(1).

We also note that, contrary to Rockwell's argument (Memorandum in Support at 3), Iacobellis and Beall were kept apprised of information relating to "the operations of the [Rocky Flats] Plant." Exhibit I is an August 5, 1988 memorandum from Rockwell's Plant President, D.J. Sanchini, to Iacobellis and Beall, among others, entitled "Monthly Activity Report--Rocky Flats Plant."[2]

---

[2] This memorandum was provided to counsel for defendant by the Environment and Natural Resources Division of the Department of Justice from the non-grand jury criminal investigative files on April 19, 1994, subsequent to the conversation alluded to in Rockwell's Memorandum in Support at 3, in which defendant's counsel stated that he did not intend to depose Beall and Iacobellis on the day-to-day operations of the Plant. In view of the reference to

Thus, it is clear that the Government seeks to depose Beall and Iacobellis, not to "harass Rockwell and waste the time of its top officers" (Memorandum in Support, at 4-5), but because these officials have information that is directly and clearly relevant to the issues in this lawsuit.

B. Rockwell's Burdensomeness Objection
Should Be Rejected By This Court

Rockwell's only other argument in support of a protective order is that Beall and Iacobellis are Rockwell's "top officers" and that it would be "burdensome and oppressive" for them to sit for deposition in this matter. See Memorandum In Support, at 4-6.

In view of the fact that these officials have information bearing on the interpretation of the Contract provision upon which Rockwell's breach claim turns, the high positions they occupy in the Rockwell organization is no reason the Government should be denied an opportunity to depose them. This is especially true in light of the fact that Rockwell will this week be deposing the top officers of DOE, former Secretary James D. Watkins, former Deputy Secretary Moore, former Undersecretary John C. Tuck, and former Acting Assistant Secretary for Defense Programs John L. Meinhardt. (See Rockwell's Notice of Deposition, attached hereto as Exhibit J.)

---

pondcrete on page 1 of Exhibit I, defendant's counsel now intends to question Beall and Iacobellis regarding pondcrete, which is one subject of defendant's theory that Rockwell officials concealed and misrepresented environmental problems at the Plant. See Defendant United States' Motion And Memorandum In Support Of Motion To Determine The Sufficiency Of Plaintiff Rockwell International Corporation's Objections To Discovery And To Compel Responses, dated April 18, 1993.

# Exhibit 51

ORIGINAL

# In the United States Court of Federal Claims

No. 91-1362C

(Filed: MAY 2 4 1994 )

| | |
|---|---|
| ROCKWELL INTERNATIONAL CORPORATION | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES | ) |

FILED
MAY 24 1994
U.S. COURT OF FEDERAL CLAIMS

ORDER

On April 19, 1994, the plaintiff filed a Motion for a Protective Order. On April 28, 1994, the defendant filed its Memorandum in Opposition to Motion of Plaintiff Rockwell International Corporation for a Protective Order and Motion for Leave to Take the Contested Depositions Outside of the Court-Ordered Discovery Period.

The plaintiff's Motion for a Protective Order is hereby denied. The defendant's Motion for Leave to Take the Contested Depositions Outside of the Court-Ordered Discovery Period is hereby allowed. The depositions of Mr. Donald R. Beall, plaintiff's Chairman of the Board and Chief Executive Officer, and Mr. Sam F. Iacobellis, plaintiff's Executive Vice President and Deputy for Major Programs, shall be completed on or before July 29, 1994.

IT IS SO ORDERED.

Robert J. Yock
Judge