# Exhibit 50

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
APR 28 1994
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCKWELL INTERNATIONAL CORPORATION, Plaintiff, | ) | |
| v. | ) | No. 91-1362C (Judge Yock) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION OF PLAINTIFF ROCKWELL INTERNATIONAL CORPORATION FOR A PROTECTIVE ORDER AND MOTION FOR LEAVE TO TAKE THE CONTESTED DEPOSITIONS OUTSIDE OF THE COURT-ORDERED DISCOVERY PERIOD

Defendant opposes plaintiff Rockwell International Corporation's ("Rockwell") Motion For A Protective Order, dated April 18, 1994. The matters into which defendant will inquire in the depositions of Donald R. Beall, Rockwell's Chairman of the Board and Chief Executive Office, and Sam F. Iacobellis, Rockwell's Executive Vice President and Deputy for Major Programs, are "relevant to the subject matter involved in the pending action . . . [and/or] appear reasonably calculated to lead to the discovery of admissible evidence," and, therefore, are permissible and proper under RCFC 26(b)(1). Indeed, their testimony will bear directly upon the key issue in this proceeding: the proper interpretation of the contract provision regarding the Department of Energy ("DOE") official or officials authorized to make the award fee determination. It is for this reason that the Government has noticed the depositions of these two Rockwell officials, not in order to "harass Rockwell and waste the time of its top officers," as Rockwell asserts in its Memorandum in Support (at 4-5). Accor-

dingly, the Court should deny Rockwell's protective order motion.

Assuming that the Court does deny Rockwell's motion, defendant moves for leave to take these depositions outside the discovery period ending May 1, 1994.

## I. Opposition To Motion For A Protective Order

### A. The Depositions Of Beall And Iacobellis Are Relevant Both To The Issues Rockwell Has Raised In The Complaint And To The Government's Defenses

Rockwell filed this action to recover alleged breach of contract damages under Contract DE-AC04-76DP03533 ("the Contract") with the DOE for the operation of the Rocky Flats nuclear weapons plant near Denver, Colorado. Rockwell managed the plant for DOE from 1975 to December 31, 1989, pursuant to the Contract and its modifications. The Contract was a cost plus award fee type. DOE paid all of the costs, and determined the award fee to be paid Rockwell for its management efforts on a semi-annual basis. (See, e.g., Complaint, ¶ 13.)

Rockwell contends that, during fiscal year 1989, officials in DOE headquarters in Washington, D.C. "improperly influenced or coerced" DOE field officials in the Albuquerque, New Mexico Operations Office [ALOO] and the Rocky Flats Office [RFO] to reduce its award fees (Complaint, ¶¶ 13, 26-28, 31, 35), and thereby breached the Contract. Rockwell seeks to recover the award fees it alleges it lost when DOE headquarters officials intervened in the award fee decision.

Rockwell avers that, under the Contract, the award fee was required to be the "subjective determination" of the Manager of

ALOO, but that, during the two semi-annual award fee periods (10/1/88-3/31/89 and 4/1/89-9/30/89) in question, it was not. (Complaint, ¶¶ 12 and 13.) Rockwell argues that a single individual, the Manager of ALOO, was the one and only person in DOE who was permitted to decide the award fee. This is a question of contract interpretation.

Clause 54, entitled "Allowable Costs, Base Fee and Award Fee," of Modification M087 of the Contract, effective January 1, 1986, a copy of which is attached as Exhibit A, provided in pertinent part:

> (a) Compensation for Contractor's Services. Payment for the allowable costs as hereinafter defined and of the base fee and so much, if any, of the award fee **as may be determined by the Contracting Officer** . . . shall constitute full and complete compensation for the performance of the work and furnishing of services under the this contract. [Emphasis added.]

Clause 1 of Modification M087 defines the Contract defines the "Contracting Officer" as

> a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings.

The subsection of Clause 54 upon which Rockwell relies in arguing that the Manager of ALOO was the single individual permitted under the Contract to decide the award fee states:

> (b) (1) Base Fee and Award Fee. The amount of the award fee actually to be paid to the Contractor shall be determined by the **Award Fee Determination Official (Manager, or anyone acting as Manager, Albuquerque Operations) . . . .**

[Emphasis added.][1]

Thus, Clause 54(a) states that the award fee decision is to be made by the Contracting Officer, and that term is defined in such a manner as to include a class of DOE officials arguably including then Secretary of Energy James D. Watkins and other high-level DOE headquarters officials. Clause 54(b)(1) states that the award fee is to be determined by the AFDO, defined as the Manager of ALOO, or "anyone acting as the Manager [of ALOO]." The meaning of these contract provisions - which are key to Rockwell's claim in this case - is subject to interpretation.

It is well-established that, in construing the terms of a contract, "the parties' intent must be gathered from the instrument as a whole." Kenneth Reed Construction Corp. v. United States, 201 Ct. Cl. 282, 288, 475 F.2d 583, 586 (1973). Moreover, in determining intent, the parties' contemporaneous interpretation of a contract, before any dispute has arisen, is entitled to great weight. Lear-Sigler Management Serv. Corp. v. United States, 867 F.2d 600, 603 (Fed. Cir. 1989); Truong Xuan Truc v. United States, 212 Ct.Cl. 51 (1976); Petrofsky v. United States, 203 Ct.Cl. 347, 488 F.2d 1394 (1973); Inland Empire Builders, Inc. v. United States, 191 Ct.Cl. 742, 424 F.2d 1370 (1970). The actions and statements of Rockwell's top executive officials, Beall and Iacobellis, during the period just prior to the time when this dispute arose, bear directly on the interpretation of the key

---

[1] Language similar to that found in Clause 54(b)(1) is also found in Appendix D entitled "Award Fee Plan."

provisions of the Contract.

By way of background, on May 31, 1989, the Manager of ALOO sent DOE headquarters his award fee recommendations for the period October 1, 1988 through March 31, 1989 for various contractors under his supervision including Rockwell. Within a couple of days, Troy E. Wade, II, the Acting Assistant Secretary for Defense Programs (whom Rockwell is deposing this week), who was aware that the FBI planned to raid the Rocky Flats Plant on June 6, 1989, held up the Rockwell award fee determination. (See Exhibit B, p. 5.) The determination of Rockwell's award fee was subsequently taken under advisement by DOE headquarters officials, and the decision was not issued until late September, 1989. (See Exhibit C.)

During the interim, Beall and Iacobellis had numerous conversations with Secretary Watkins and Deputy Secretary W. Henson Moore about a wide range of contract issues including Rockwell's award fee. In mid-June 1989, shortly after the FBI raid, Iacobellis and Moore had a conversation "regarding the status of the Department's determination of Rockwell's award fee for the most recent completed evaluation period [October 1, 1988 through March 31, 1989] . . . ." Moore informed Iacobellis that "the final determination has been suspended pending receipt by the Secretary of the report by the special department team that he dispatched to Rocky Flats." Moore added: "I am sure you understand our need to review this matter with care, and the Department will make its determination as promptly as possible." (See June 20, 1989 letter from Moore to Iacobellis attached as Exhibit D hereto.)

On August 17, 1989, Iacobellis initiated contact with Moore to raise certain concerns by Rockwell about the exposure of Rockwell employees to criminal liability for violations of the environmental laws at the Rocky Flats Plant. (See Exhibit E.) In Moore's response of August 28, 1989, Moore advised Iacobellis that Rockwell's best course of action would be to operate the Plant in compliance with the environmental laws as required by the Contract. Moore stated: "We fully expect that all actions will be taken to bring the operations of Rocky Flats into full compliance as quickly as possible. We will be working with you to achieve this objective." (See Exhibit F.)

On September 6, 1989, Beall wrote to Secretary Watkins reiterating Rockwell's position that it intended to suspend operations at Rocky Flats unless Rockwell received immunity from prosecution. (See Exhibit G.) On September 18, 1989, Beall initiated a phone call to Secretary Watkins. Beall alluded to a September 15 conversation in which Secretary Watkins had responded to Rockwell's threat to suspend operations by stating that "DOE might terminate the contract if Rockwell stopped operations." Beall advised Watkins that Rockwell intended to continue with operations for the time being. Watkins stated that DOE might replace Rockwell as the contractor "[i]f Beall could not keep his eye on the Rocky Flats operations . . . ." (See Exhibit H.)

On September 20, 1989, Watkins wrote to Beall informing him that "[a]fter [a] thorough review, the Department has concluded that an award fee that reflects approximately 40% of the total

possible award fee is the proper determination . . . . Accordingly, Rockwell will, in the near future, be advised of the particulars of the award fee determination of the Department by the appropriate contracting officer, as is the normal procedure." (See Exhibit C.)

This course of dealing between the highest officials of Rockwell and the highest officials of DOE reflects the parties' contemporaneous interpretation of the Contract provisions upon which Rockwell's claim turns. Indeed, the fact that some of these contacts were initiated by Beall and Iacobellis is in itself significant with respect to the issue of whether the Contract should be interpreted such that only lower echelon DOE officials were allowed to make the award fee determination. Thus, the information possessed by Beall and Iacobellis bears directly upon the central issue in this case, and their depositions are clearly authorized under RCFC 26(b)(1).

We also note that, contrary to Rockwell's argument (Memorandum in Support at 3), Iacobellis and Beall were kept apprised of information relating to "the operations of the [Rocky Flats] Plant." Exhibit I is an August 5, 1988 memorandum from Rockwell's Plant President, D.J. Sanchini, to Iacobellis and Beall, among others, entitled "Monthly Activity Report--Rocky Flats Plant."[2]

---

[2] This memorandum was provided to counsel for defendant by the Environment and Natural Resources Division of the Department of Justice from the non-grand jury criminal investigative files on April 19, 1994, subsequent to the conversation alluded to in Rockwell's Memorandum in Support at 3, in which defendant's counsel stated that he did not intend to depose Beall and Iacobellis on the day-to-day operations of the Plant. In view of the reference to

Thus, it is clear that the Government seeks to depose Beall and Iacobellis, not to "harass Rockwell and waste the time of its top officers" (Memorandum in Support, at 4-5), but because these officials have information that is directly and clearly relevant to the issues in this lawsuit.

B. Rockwell's Burdensomeness Objection Should Be Rejected By This Court

Rockwell's only other argument in support of a protective order is that Beall and Iacobellis are Rockwell's "top officers" and that it would be "burdensome and oppressive" for them to sit for deposition in this matter. See Memorandum In Support, at 4-6.

In view of the fact that these officials have information bearing on the interpretation of the Contract provision upon which Rockwell's breach claim turns, the high positions they occupy in the Rockwell organization is no reason the Government should be denied an opportunity to depose them. This is especially true in light of the fact that Rockwell will this week be deposing the top officers of DOE, former Secretary James D. Watkins, former Deputy Secretary Moore, former Undersecretary John C. Tuck, and former Acting Assistant Secretary for Defense Programs John L. Meinhardt. (See Rockwell's Notice of Deposition, attached hereto as Exhibit J.)

---

pondcrete on page 1 of Exhibit I, defendant's counsel now intends to question Beall and Iacobellis regarding pondcrete, which is one subject of defendant's theory that Rockwell officials concealed and misrepresented environmental problems at the Plant. See Defendant United States' Motion And Memorandum In Support Of Motion To Determine The Sufficiency Of Plaintiff Rockwell International Corporation's Objections To Discovery And To Compel Responses, dated April 18, 1993.

# Exhibit 51

ORIGINAL

# In the United States Court of Federal Claims

No. 91-1362C

(Filed: MAY 2 4 1994 )

FILED
MAY 24 1994
U.S. COURT OF FEDERAL CLAIMS

ROCKWELL INTERNATIONAL CORPORATION )
)
)
v. )
)
THE UNITED STATES )

## ORDER

On April 19, 1994, the plaintiff filed a Motion for a Protective Order. On April 28, 1994, the defendant filed its Memorandum in Opposition to Motion of Plaintiff Rockwell International Corporation for a Protective Order and Motion for Leave to Take the Contested Depositions Outside of the Court-Ordered Discovery Period.

The plaintiff's Motion for a Protective Order is hereby denied. The defendant's Motion for Leave to Take the Contested Depositions Outside of the Court-Ordered Discovery Period is hereby allowed. The depositions of Mr. Donald R. Beall, plaintiff's Chairman of the Board and Chief Executive Officer, and Mr. Sam F. Iacobellis, plaintiff's Executive Vice President and Deputy for Major Programs, shall be completed on or before July 29, 1994.

IT IS SO ORDERED.

Robert J. Yock
Judge