# Defendant's Supplemental Exhibit 58

United States Government | Department of Energy

# memorandum

Albuquerque Operations Office
Rocky Flats Area Office

DATE: JUL 27 1989

REPLY TO ATTN OF: ADM:CHB

SUBJECT: Award Fee Determination for the Period, October 1, 1988, through March 31, 1989, Rockwell International Inc.

TO: Bruce G. Twining Manager, AL

Based on my review of Rockwell's performance as it relates to the first half of FY89, I offer my observations for your your consideration in a fee determination for the Plant portion of the award fee for the subject period. These observations differ from the PERB's original recommendation in the FPA's on General Management, Quality Assurance and Environment, Safety and Health. I agree with the PRMP/PROVE portion of the fee determination recommended by the PERB.

The problems that I see in my review of Rockwell's ongoing operations tend to impact the three FPA's noted above for which I recommend revised scores, but the basic problem which underlies all FPA's is a lack of discipline in operation. This is apparent in Rockwell's failure to adequately define the entire safety envelope for the operation of each facility. This should, but does not, manifest itself in a cohesive flow from Safety Analysis Reports to Operational Safety Requirements to limiting conditions for operations to detailed operator procedures. A lack of clear lines of responsibility for operations, safety, maintenance,etc. is apparent. This is evidenced by an incident in which a building manager was unaware of a decision about filter changes which had significant safety implications for his operation. We see many instances in which decisions are made by people without the proper knowledge or training. Because these matters indicate systematic ongoing conditions that require significant improvement, I believe there is no doubt that they existed during the first half of FY 1989.

The overall lack of discipline is also apparent in the Waste Management program. The system that exists to identify and track drums lacks formality. No uniform system exists from building to building to classify waste. The decisions regarding the distinctions between waste and residue appear to be arbitrary. An integrated waste management program is not really evident.

With the exception of the weapons program, the implementation of a Quality Assurance program is inadequate. Operators on the floor do not consistently follow formal procedures. We have observed instances where operators signed off on procedures in "rote" fashion, evidently without reading them or receiving proper training on their implementation. We find no system in place to check adherence to operating procedures.

JUL 27 1989

In the area of Environment Safety and Health, my teams constantly observed failures to adhere to established safety procedures. During the first half of FY 1989, there were 30 lost time injuries, an average of one every 8.6 days. The Headquarters EH on-site representatives routinely observe and report problems which in-plant supervision should identify and correct without outside intervention. Again, these are systematic problems indicating a lack of discipline in operations and proper attentiveness to safety.

In addition to my observations, during the period Rocky Flats and AL staff identified the following problems which I regard as deficiencies;

General Management

The identification and resolution of problems by Rockwell is too slow. Examples are pondcrete storage monitoring, analysis of National Pollution Discharge Elimination System (NPDES) violations, internal dissemination of incident information within Rockwell, and Rockwell's inability to provide timely information on the availability of waste for shipment when the Governor of Idaho curtailed shipments of TRU mixed waste. During the period, Rockwell violated Department of Transportation Regulations on two shipments of waste to Nevada. Although nitrate concentrations on the 750 pad increased and reached an all time high, Rockwell took little action to contain the major contributor, saltcrete. Rockwell has not made adequate progress to prepare for utilization of TRUPACT because the definition of alterations required to modify Building 664 to utilize TRUPACT containers was not made in a timely manner.

Quality Assurance

Rockwell has failed to make the necessary progress towards the establishment of a new standard of excellence and attendant requirements, procedures and practices in nuclear facility operations.

In three incidents during the period, Rockwell failed to provide the necessary measures to adequately control nonconforming WR material. Analysis of each incident revealed that the cause was either a breakdown of an existing system or lack of an adequate system.

Environment Safety and Health

The PERB report contains seven "Notable Deficiencies". I believe the first two are properly categorized as "Notable Significant Deficiencies". The Shutdown of Building 771 was the result of a management failure to prevent degradation of safety conditions to the point that a shutdown was necessary. Also, the release of dilute chromic acid demonstrated a series of inadequate controls that eventually resulted in an offsite discharge.

A copy of the January 12, 1989, memorandum from A. E. Whiteman to Dominick J. Sanchini establishing CPAF Goals and Objectives for the period is attached. I believe the foregoing information provides evidence of Rockwell's failure to

JUL 27 1989

meet those Goals and Objectives as they relate to the three FPA's noted above. For your consideration, attached is a revised calculation of the award fee for the period that factors in the conditions which I have described.

Please contact me or have your staff contact Claude Barkmeier of my staff on FTS 320-4263 if you have further questions.

Edward B. Goldberg
Acting Area Manager

Attachment

# AWARD FEE RECOMMENDATION

**CONTRACT NO.: DE-AC04-76DP03533**

**CONTRACTOR: ROCKWELL INTERNATIONAL CORPORATION - PLANT**

**PERIOD: October 1, 1988 - March 31, 1989**

## ROCKY FLATS OFFICE RECOMMENDATION

| FPA's | ADJECTIVAL GRADE | NUMERICAL GRADE X | WEIGHT = | SCORE |
|---|---|---|---|---|
| General Management | GOOD | 81 | 25% | 20.25 — ? |
| Production Operations | OUTSTANDING | 96 | 15% | 14.40 |
| Cost Management | EXCELLENT | 95 | 15% | 14.25 |
| Quality | VERY GOOD | 88 | 15% | 13.20 — ? |
| Environment, Safety and Health | MODERATELY GOOD | 79 | 20% | 15.80 — ? |
| Chemical Operations | EXCELLENT | 91 | 10% | 9.10 |
| | | | 100% | 87.00 |

**MAXIMUM AVAILABLE AWARD FEE**
**$6,822,000**

**RECOMMENDED FEE**
**$3,628,622**

Edward S. Goldberg
Acting Area Manager
Rocky Flats Office

Too High!

Based on what we know + Goldberg's comments, how can Ed arrive at these % ?

JM

E 001598

**PERFORMANCE EVALUATION**
**ROCKWELL INTERNATIONAL CORPORATION**
**CONTRACT NO. DE-AC04-76DP03533**
**FOR THE PERIOD OCTOBER 1, 1988 - MARCH 31, 1989**

The overall performance of Rockwell International Corporation (Rockwell) has been maintained at least at a level of "Satisfactory" during the period October 1, 1988, through March 31, 1989.

The following is an evaluation of the performance of Rockwell, relative to the management and operation of the Rocky Flats Plant, including the performance for the Plutonium Recovery Modification Project (PRMP)/Plutonium Recovery Option Verification Exercise (PROVE), in the Functional Performance Areas (FPA's) selected for award fee evaluation. The first section covers Plant operations while the second section covers PRMP/PROVE. The General Management FPA was evaluated considering performance for both areas.

The selected FPA's for Plant operations have been evaluated in accordance with the contract Award Fee Plan, and the following discussion of each FPA and resulting award fee earned reflects an integrated assessment of all factors.

**PLANT**

GENERAL MANAGEMENT: There was a rapid resolution to the problem of obtaining United States Department of Transportation approval for using a modified ATMX railcar for making the first shipment of Transuranic mixed waste in 1989. Interplant schedule compliance continued at 100% for the third consecutive rating period. The Emergency Preparedness organization has a well-planned and effective program, is involved in Albuquerque Operations Office (AL)-wide coordination activities, and continues to make improvements. In less than four years, Rockwell has exceeded a ten-year Energy Conservation Goal.

Rockwell has not made adequate progress to prepare for utilization of the TRUPACT II container when it becomes available. The identification and timely resolution of problems by Rockwell is often slow. Rockwell has recently violated DOT regulations on two shipments to the Nevada Test Site. Despite the knowledge that nitrate concentrations on the 750 pad have increased, little action has been taken to contain saltcrete after precipitation events. Rockwell is still not placing sufficient emphasis on the timely establishment of the Rocky Flats Institute. Inadequate project staffing for the PRMP continues to influence Rockwell's performance.

COST MANAGEMENT: Good data and narratives provided by Rockwell to define Department of Energy (DOE) unfunded Environment, Safety, and Health requirements in an FY89 supplemental budget request were also used to support DOE requests to Congress for additional FY90 funding. Rockwell has done an extraordinary job of tracking information and preparing responses to a large variety of budget information requests and of maintaining the current status of its requirements. In addition, construction project data sheets and conceptual design reports supporting Capital Budget requests were both of high quality and ahead of schedule. Budget narratives were improved and expanded and were helpful in DOE's analysis of Rockwell's resource requirements.

QUALITY: Non-Weapons Quality Assurance activities conducted during the Building 771 restart have resulted in an improved quality program to be used in the operation of the building. For War Reserve Quality Assurance, Rockwell is implementing Phase 2 of the Quality Improvement Plan which will continue a new culture in quality practices and should lead to further improvement in the Quality Assurance program.

Rockwell failed to establish or make the necessary progress towards the establishment of a new standard of excellence and attendant requirements, procedures, and practices in nuclear facility operations. In addition, three incidents came to DOE's attention where Rockwell failed to provide the necessary measures to adequately control nonconforming product material.

CHEMICAL OPERATIONS: Noteworthy progress has been made towards the implementation of the Operational Readiness Review (ORR) program as demonstrated through ORR's in Building 771 and elsewhere. Rockwell has also successfully completed the development of a new extractant compound for use in the Molten Salt Extraction process. Both of these accomplishments will yield safer and more controlled production processes while maintaining or improving production performance.

PRODUCTION OPERATIONS: Significant progress has been made in the development of a Nuclear Facility Operations Manual. Rockwell has been supportive of the AL effort to develop an Operational Surety Program. Rockwell has taken several steps to reduce work in process inventories and process times by, among other things, reduced planned process times in Building 460, reduced pit assembly process time in Building 707, and reduced lot sizes on the ST bodies.

ENVIRONMENT, SAFETY, AND HEALTH: Progress towards achieving a high quality training program and the establishment of a new pilot radiation safety course are among the notable achievements in the radiation protection area. Rockwell has demonstrated good responsiveness in the preparation and coordination on National Emissions Standards for Hazardous Air Pollutants issues specific to the Rocky Flats Plant and has contributed to the DOE-wide review of this regulation. Significant progress has been made towards reducing the rate of radiological incidents. Several positive steps have been taken towards achievement of a permanent reduction in plant personnel ratiation exposure. In the safety program, substantial corrective actions are underway, including the development of an integrated safety program. A Safety Review Group has been established and its efforts during the period were commendable.

The shutdown of Building 771, resulting despite earlier identification of safety problems, created major disruptions to the commitments for processing of plutonium. An unintentional release of dilute chromic acid revealed inadequate procedures for the reporting and coordination of discovered releases to the sewage treatment plant with downstream control of contamination. Rockwell's housekeeping of production buildings has not improved adequately. Although a downward trend has been achieved during the first five months of FY89, no significant progress in reducing the wound rate has yet occurred. Rockwell has been unable to resolve the 1988 National Pollutant Discharge Elimination System permit violations for five-day biochemical oxygen demand. Regarding the East Firing Range, Rockwell has taken no action to date in response to concerns about its safe operation. The ES&H management oversight of Building 771 operations after the January 19, 1989, phased restart was inadequate.

PEMP/PROVE

PROJECT MANAGEMENT: Rockwell has given PROVE renewed emphasis by separating responsibility for PROVE from that of the PEMP and placing it under a full-time project manager. The recently implemented "Precursor Plan" represents an improvement in direction for the entire project and was implemented with professionalism and enthusiasm.

Overall PEMP management attention to project technical, cost, schedule, and manpower need was inadequate. In addition, inadequate project staffing continues to influence Rockwell's performance.

COST MANAGEMENT: Cost development and baselining of costs for the "Precursor Plan" have been handled with the highest degree of quality. Rockwell's redirection of J. A. Jones' manpower planning on PROVE resulted in reduced costs and apparent increased construction productivity.

PROVE continues to demonstrate cost growth. PEMP cost planning far exceeded available project funding allocations.

SCHEDULE PERFORMANCE: Rockwell has successfully resolved several problems which were impacting schedule in the PROVE area. The diligent effort by Rockwell, Bechtel, and J. A. Jones in the joint development of the Precursor planning has resulted in a comprehensive schedule that should provide a smooth transition from PROVE to the receipt of capital funding for PEMP.

The PROVE schedule has deteriorated during the reporting period, extending the PROVE end date from 1/90 to 8/90.

SUBCONTRACT MANAGEMENT: Rockwell, consistent with project technical needs and evolved cost and schedules, has provided rapid and effective subcontract redirection of Bechtel. Rockwell subcontract management of J. A. Jones has ensured J. A. Jones' participation in construction planning. Rockwell has been successful in obtaining active participation and commitment from the National Laboratories and other Rockwell organizations on the PEMP Precursor Program.

The subcontract work with the PROVE glovebox manufacturer has resulted in the need for significant rework to the glovebox piping and piping penetration welds. Line Item and cost/schedule activities over the balance of the FY89 demand that Rockwell provide continuous site representation at Bechtel.

DESIGN QUALITY: The Precursor Program, geared toward improving PEMP design quality, has been initiated with broad based involvement. Use of the Configuration Control System for PROVE has been greatly improved.

The quality of the existing PROVE engineering has been poor, and change orders to correct poor initial design quality are reflected in cost growth.

TECHNICAL PRODUCT QUALITY: PROVE activities in addressing and rectifying glovebox welding problems are directed towards, and should significantly improve, technical product quality.

Welding problems recently surfacing on the PROVE glovebox indicate a significant lack of technical product quality success.

Defendant's Supplemental Exhibit 59

P49

United States Government — Department of Energy

# memorandum

Albuquerque Operations Office

PREDECISIONAL

DATE: JUL 1 ? 1989

REPLY TO ATTN OF: CPD

SUBJECT: Award Fee Determination for Period October 1, 1988, through March 31, 1989, Rockwell International, Inc.

TO: Bruce G. Twining, Manager, OOM

In February 1988, Department of Energy (DOE) Headquarters (HQ) performed a Technical Safety Appraisal (TSA) at Rocky Flats which disclosed a number of significant safety concerns. This was the third TSA performed at Rocky Flats. Many of the concerns were repeated from the previous two TSA's. As a result of these disclosures, DOE HQ, Albuquerque Operations Office (AL), and Rockwell all agreed to the actions required to correct the areas of concern. All of the parties recognized that due to the magnitude and complexity of the problems, considerable resources, as well as a substantial period of time, would be required to make the necessary upgrades and cultural changes. All of the parties agreed that this could be done while the plant operated without jeopardizing the plant employees or the public.

Although Rockwell initiated a number of corrective actions and did, in fact, make reasonable progress in correcting the concerns, AL and DOE HQ decided, in early October 1988, that sufficient progress had not been made in radiation protection in Building 771 and that building was shut down. Rockwell prepared a comprehensive corrective action plan coupled with an aggressive restart plan and began a phased restart in January 1989, under close scrutiny of DOE HQ and AL.

A follow-up TSA was conducted in November-December 1988, which focused on the safety performance at all facilities at Rocky Flats, in contrast to prior TSA's which addressed individual buildings. The TSA recognized that the Rocky Flats safety program was in transition and was open to change, which was a marked improvement to the earlier environment. The TSA also recognized that the management initiatives by Rockwell represent a noteworthy first step in what must be a continuing effort that assures safety as a high priority and noted that the major changes initiated can take several years to be effectively embraced. The TSA further noted that substantial corrective actions were underway and that continued progress and heightened safety awareness by Rockwell provide a measure of confidence that the safety upgrades can be effectively implemented.

The Performance Evaluation Review Board (PERB) evaluated Rockwell's performance for the period October 1, 1988, through March 31, 1989, in light of AL's own oversite activities and all the above information using DOE guidelines and standards known at the time the evaluation was performed. Subsequently, much more stringent expectations of contractor performance have been mandated by the Secretary and other DOE policymakers' statements and issuances.

PREDECISIONAL

PREDECISIONAL

Bruce G. Twining 2 JUL 10 1989

In light of these new expectations, if the PERB was to reassess Rockwell's performance for the period October 1, 1988, through March 31, 1989, it would, in all likelihood, recommend a lower overall rating. Therefore, the PERB would not object to Ed Goldberg's proposed overall numerical rating of "87."

Finally, since Mr. Goldberg has been on site for the past several weeks and would, therefore, have a greater insight into current conditions within the plant, we do not believe you are in a position to offer an informed alternative to his proposal.

Charlie:
This is the draft memo which was sent to Mr. Tuck on July 10, 1989.
You may want to sign the memo for our records.
Ted Hill

...rles E. Troell
...rman, Performance Evaluation
...view Board

PREDECISIONAL

Defendant's Supplemental Exhibit 60

UNCLASSIFIED

DOE F 1325.7

Exception to SF 14 Approved by NARS, June 1978

1. INSERT ABOVE, CLASSIFICATION LEVEL, UNCLASSIFIED, OR OFFICIAL USE ONLY

2. MESSAGE CONTAINS WEAPON DATA? ("X" appropriate box. Message Center will not transmit message unless one box is marked.) ☐ YES ☒ NO

U.S. DEPARTMENT OF ENERGY
TELECOMMUNICATION MESSAGE
*(See reverse side for Instructions.)*

3. USE WHEN REQUIRED
THIS DOCUMENT CONSISTS OF 10 PAGES
NO ____ OF ____ COPIES, SERIES ____

4. PRECEDENCE DESIGNATION ("X" appropriate box):

| | FOR NORMAL USE | | EMERGENCY USE ONLY | |
|---|---|---|---|---|
| ACTION: | ☐ Routine | ☒ Priority | ☐ Immediate | ☐ FLASH |
| INFO: | ☐ (6 Hrs.) | ☐ (3 Hrs.) | ☐ (30 Mins.) | ☐ (ASAP) |

5. TYPE OF MESSAGE ("X" appropriate box)
☒ Single Address
☐ Multiple Address
☐ Title Address
☐ Book Message

FOR COMMUNICATION CENTER USE
MESSAGE IDENTIFICATION
NR DTG: Z

6. FROM Theetis V. Hill
U. S. Department of Energy
Albuquerque Operations Office
Contracts and Procurement Division

7. OFFICIAL BUSINESS TIME: A.M. P.M.
(Signature of authorizing official)

8. DATE 8/9/89

9. TO

DOE, HQ
John E. Meinhardt
DP-1/Room 4A-014/FORS
586-2177

COMMUNICATION CENTER ROUTING
69 E 69 P

BE BRIEF - ELIMINATE UNNECESSARY WORDS

10. ORIGINATOR (On separate lines, enter Name, Routing Symbol, & Tel. No.)

Hill
CPD
4-9189

11. DERIVATIVELY CLASSIFIED NSI

NATIONAL SECURITY INFORMATION
Unauthorized Disclosure subject to Administrative and Criminal Sanctions.

Derivative Classifier: (Name)
(Title)
Declassify on: (Date or Event, OADR)
Derivatively Classified by (Guide or Source Document)

12. ORIGINALLY CLASSIFIED NSI

NATIONAL SECURITY INFORMATION
Unauthorized Disclosure subject to Administrative and Criminal Sanctions.

Originally Classified by: (Name)
(Title)
Declassify on: (Date or Event, OADR)

13. ☐ RESTRICTED DATA

This document contains Restricted Data as defined in the Atomic Energy Act of 1954. Unauthorized disclosure subject to Administrative and Criminal Sanctions.

DERIVATIVE CLASSIFIER

14. ☐ FORMERLY RESTRICTED DATA

Unauthorized disclosure subject to Administrative and Criminal Sanctions. Handle as Restricted Data in Foreign Dissemination Section 144.b Atomic Energy Act, 1954

DERIVATIVE CLASSIFIER

E 002252

LOGGER

CONCURRENCE 3-89-694

| RTG. SYMBOL | INITIALS/SIG. | DATE |
|---|---|---|
| CPD:MOCB:1 | Hill/Cone | 8/3/89 |
| CPD | Bell/Hoya | 8/4/89 |
| OESH | Krenz | 8/4/89 |
| OCW | Hymer | 8/8/89 |
| OCC | Stout | 8/ /89 |
| OMA | Hanson | 8/8/89 |
| OMA | Trout | 8/8/89 |
| OCM | Culpepper | 8/ /89 |
| OCM | Twining | 8/ /89 |

AUG 8 1989

CPD

Award Fee Determination for the Period October 1, 1988, through March 31, 1989, Rockwell International Corporation (RI)

John L. Meinhardt, Acting Assistant Secretary for Defense Programs, DP-1, HQ

Reference is made to my memorandum to Troy E. Wade dated May 31, 1989, regarding Award Fee Determinations for the subject period. Mr. Wade responded on June 21, 1989, concurring in the Albuquerque Operations Office (AL) findings for all AL Management and Operating (M&O) award fee contractors with the exception of RI. He further stated that "it would be premature at this time to make a final determination until the Department of Energy investigation of environmental, safety, and health charges are resolved."

Edward S. Goldberg, Acting Area Manager, Rocky Flats Area Office, has made a review of RI's performance for the first half of FY 1989, and has offered his observations for my consideration in making an Award Fee Determination. Mr. Goldberg's observations relate to three Functional Performance Areas, General Management, Quality, and Environment, Safety, and Health, and are set forth in the attached memorandum dated July 27, 1989. Based upon Mr. Goldberg's on-site review, he has proposed an overall numerical rating of "87" for RI Plant Operations, which equates to an award fee of $3,628,622 or 53.19 percent of the available award fee. Mr. Goldberg concurs with my recommended award fee of $186,591 for the Plutonium Recovery Modification Project/Plutonium Recovery Option Verification Exercise.

As stated in my draft memorandum to John C. Tuck dated July 10, 1989, although I am the Award Fee Determination Official for the RI Contract, Mr. Goldberg's presence on site during the past several weeks has undoubtedly given him considerable insight into current conditions at the Rocky Flats Plant. Given this, I am not in a position to offer an informed alternative to his proposal, especially in view of our changing philosophy in the application of Department of Energy (DOE) performance standards and the level of DOE expectations. Although the proposed change to an overall numerical rating of "87" may seem modest when compared to the previously proposed AL rating of "91.2," the result is a downward adjustment in the dollar award of $1,697,859 (-31.9 percent) due to the steepness of the AL award fee distribution curve which we negotiated with RI in order to optimize RI's performance.

Based upon the above considerations, I propose to approve an award fee of $3,628,622 for RI, subject to your concurrence. The Performance Evaluation Report, as revised to reflect Mr. Goldberg's observations, is attached for your review. The report will be sent to RI when the final Award Fee Determination is made.

E 002253

Please indicate your concurrence/nonconcurrence below. If you have questions or if additional information is required, please let me know.

Original Signed By
BRUCE G TWINING

Bruce G. Twining
Manager

2 Attachments

/__/ Concur /__/ Nonconcur

John L. Meinhardt
Acting Assistant Secretary for
Defense Programs

# Defendant's Supplemental Exhibit 61

P88

EXECUTIVE SUMMARY

| | |
|---|---|
| SUBJECT: | Award Fee Determination, Rockwell International Corporation |
| Technical Monitor/Division: | Rocky Flats Office |
| Contractor/Contract No: | Rockwell International Corporation/DE-AC04-76DP03533 |
| Action Initiator/Phone: | Ted Hill/4-9189 |
| Action Requested: | For Information |

Description/Nature of Action/Background

On August 8, 1989, the Manager, AL, transmitted the Rockwell award fee recommendation for the period October 1, 1988, through March 31, 1989, to John L. Meinhardt, Acting Assistant Secretary for Defense Programs, for his concurrence.

Follow-up with James P. Beiriger, DP-542.1, on August 29, 1989, resulted in the following status report:

1. Ralph Erickson, Acting Director of Weapons Production, DP-23, does not agree with the AL recommendation and has recommended about a 20% reduction.

2. A meeting was held between Admiral Barr, DP-20, David B. Leclaire, DP-50, and James P. Beiriger, DP-542.1, on August 25, 1989, to discuss the recommended 20% reduction. No decision resulted from this meeting.

3. A recommendation is being drafted from Admiral Barr to John L. Meinhardt. However, Admiral Barr is delaying his decision until he determines whether or not those "on high" will support his position.

4. In the meantime, the Office of General Counsel has been drawn into the deliberations because there is some indication that Rockwell is planning some legal action against the Department of Energy.

MOCB:3-89-757

Defendant's Supplemental Exhibit 62

2 Turn To [illegible] Willett

DOE F 1325.8
(12-84)

United States Government Department of Energy

# memorandum

DATE: SEP 6 1989

REPLY TO ATTN OF: DP-23

SUBJECT: Award Fee Determination for the Period October 1, 1988, through March 31, 1989, Rockwell International Corporation (RI)

TO: Acting Assistant Secretary for Defense Programs, DP-1

The Award Fee Determination Official (Manager, Albuquerque Operations Office), based on Performance Evaluation Review Board reports and a special onsite review, evaluation, and recommendation by Edward Goldberg, Acting Area Manager, has determined that a numerical rating of "87" be given to RI in its performance as operating contractor for the Rocky Flats Plant. The numerical rating of "87" equates to an award fee of $3,815,213 (this includes a recommended award fee of $186,591 for the Plutonium Recovery Modification Project/Plutonium Recovery Option Verification Exercise (PROVE)). The available award fee for the period was $6,822,000.

Although the recommended amount represents only 53.19 percent of the available award fee, I recommend that an additional downward adjustment be made that reflects the environmental, safety, and health (ES&H) situation that existed at the Rocky Flats Plant during the appraisal period.

I base my position on the following points:

1. Cessation of operations in Building 771 in October 1988 due to inadequate safety procedures and radiological safety margins in the building. Although Rockwell pursued a very aggressive corrections effort after the fact, the mere existence of this situation demonstrated less than satisfactory attitudes, procedures, and awareness for safety on the part of Rockwell.

2. Ninety one out of 230 safety concerns documented by external reviews (as well as by an internal Rockwell review) remained open during the period. Again, this indicates that a lack of priority attention was being paid to safety and health by Rockwell.

3. During the period, 32 new safety concerns, including 6 classified as Type 2 (serious), were identified.

4. An inoperable alarm system was not repaired and eventually was a factor in a major environmental incident on April 13, 1989, when chromic acid was released from Building 444 and contaminated the plant's holding ponds.

E 001427

Overall, I believe there is strong evidence that throughout the appraisal period there was a continuing pattern of lax attitude, inadequate procedures, and lack of priority for ES&H activities.

I recommend, therefore, the "moderately good" numerical grade of 79 given to RI for its performance under the ES&H category be downgraded to a numerical grade of 66. Since ES&H carries an evaluation weight of 20 percent, the adjusted weighted score would now be 13.2 (66 X 20). The weighted score awarded by Mr. Goldberg was 15.80. The adjusted overall rating will now be 84.4. This equates to an award fee of $2,757,126. I totally support the award fee of $186,591 for PROVE. I, therefore, recommend awarding RI a fee of $2,943,717.

J. M. Barr
Rear Admiral, U.S. Navy
Deputy Assistant Secretary
for Military Application
Defense Programs