Defendant's Supplemental Exhibit 63

PAGES: 2 (not counting cover page) DATE: 9/20/89

TO: Jim Culpepper
DOE Albuquerque Opns.

FROM: John Meinhardt, DP-1
DOE Washington

NOTE: Sender, please contact receiver to pick up message !

| LOCATION | FAX NO. | NOTES |
|---|---|---|
| FSTL DP-20 | 586-7260 | Bonnie — Please pass this to Mr. Culpepper as Mr. Meinhardt has requested. Thanks Tim Pflaum |
| GTN DP-20 | 353-5850 | |
| GTN DP-22 | 353-6417 | |
| GTN DP-32 | 353-6133 | |
| GTN DP-34 | 353-4164 | |
| GTN DP-50 | 353-2965 | |
| AL | 8-844-4197 | |
| CH | 8-972-2527 | |
| ID | 8-583-1184 | |
| OR | 8-626-1063 | |
| NV | 8-575-1371 | |
| RL | 8-444-8153 | |
| SAN | 8-536-6647 | |
| SR | 8-239-1259 | |

DRAFT

DP-23

Award Fee Determination for the Period October 1, 1988, through March 31, 1989, Rockwell International Corporation (RI)

Acting Assistant Secretary for Defense Programs, DP-1

The Award Fee Determination Official (Manager, Albuquerque Operations Office), based on Performance Evaluation Review Board reports and a special onsite review, evaluation, and recommendation by Edward Goldberg, Acting Area Manager, has determined that a numerical rating of "87" be given to RI in its performance as operating contractor for the Rocky Flats Plant. The numerical rating of "87" equates to an award fee of $3,815,213 (this includes a recommended award fee of $186,591 for the Plutonium Recovery Modification Project/Plutonium Recovery Option Verification Exercise (PROVE)). The available award fee for the period was $6,822,000.

Although the recommended amount represents only 53.19 percent of the available award fee, I recommend that an additional downward adjustment be made that reflects the environmental, safety, and health (ES&H) situation that existed at the Rocky Flats Plant during the appraisal period.

I base my position on the following points:

1. Cessation of operations in Building 771 in October 1988 due to inadequate safety procedures and radiological safety margins in the building. Although Rockwell pursued a very aggressive corrections effort after the fact, the existence of this situation indicated a less than satisfactory attitude, procedures, and awareness for safety on the part of Rockwell.

2. Ninety one out of 230 safety concerns documented by external reviews (as well as by an internal Rockwell review) remained open during the period. Again, this indicates that a lack of priority attention was being paid to safety and health by Rockwell.

3. During the period, 32 new safety concerns, including 6 classified as Type 2 (serious), were identified.

4. A major environmental incident occurred during the period when chromic acid was released from Building 444 and contaminated the plant's holding ponds. An inoperable alarm system and deficient operator vigilance contributed significantly to the seriousness of this incident.

Should be substituted for 1st ES&H paragraph of your attachment

Overall, I believe there is strong evidence that throughout the appraisal period there was a continuing pattern of lax attitude, inadequate procedures, and lack of priority for ES&H activities.

I recommend, therefore, the "moderately good" numerical grade of 79 given to RI for its performance under the ES&H category be downgraded to a numerical grade of 65.25. Since ES&H carries an evaluation weight of 20 percent, the adjusted weighted score would now be 13.05 (65.25 X 20). The weighted score awarded by Mr. Goldberg was 15.80. The adjusted overall rating will now be 84.75. This equates to an award fee of $2,716,307. I totally support the award fee of $186,591 for PROVE. I, therefore, recommend awarding RI a fee of $2,902,898.

This review was based on limited staff and limited review time; future award fee reviews will be conducted in a more rigorous fashion by my staff.

J. M. Barr
Rear Admiral, U.S. Navy
Deputy Assistant Secretary
for Military Application
Defense Programs

DP-231:JMarchetti:bc:3-3487:8/28/89(Bonnie HDD--erick15)

Distribution:
so: Addressee
6bcc: Std DASMA

Correspondence Reviewer ________

*PREVIOUS COORDINATION VALID.

Defendant's Supplemental Exhibit 64

UNITED STATES COURT OF FEDERAL CLAIMS

ROCKWELL INTERNATIONAL )
CORPORATION, )
)
)
Plaintiff, )
)
vs. ) No. 91-1362 C
) (Judge Yock)
UNITED STATES OF AMERICA, )
)
)
Defendant. )

DEPOSITION OF:

CHARLES EDWARD TROELL

Tuesday, March 2, 1993

9:30 A.M.

Reported by:

BARBARA K. HARRIS

CSR # 93

handbook, was actually part of a headquarters task force that did a fairly thorough look at the award fee possess for DOE and made several recommendations to enhance it.
Q. Were the individuals at Albuquerque who were involved in the award fee process at liberty to deviate from the handbook as they wished?
A. I would view the handbook as a guidance document, especially in a period of transition where the department is changing its award fee process.
Q. So anybody in the Albuquerque Division who thought it was a good idea to deviate from the handbook was free to do so?
A. The PERB, I believe, was free to use the document as guidance and then do what they thought was right in a specific circumstance.
Q. So if the --
A. This doesn't say order. It doesn't say -- I haven't read it. But the handbook is a guidance document.
Q. So if the handbook said one thing, the PERB was free to do something else if they thought it was sensible under the circumstances?
MR. KOLAR: Could you be more specific about instances, examples?
MR. NYE: I will get to that, but right now I am just asking generally.

I don't believe it was ever signed. It may have been.

Q. Let me draw your attention to the handwriting on the second page of the memorandum.

A. Yes.

Q. Which I believe says, "Charlie, this is the draft memo which was sent to Mr. Tuck on July 10, 1989. You may want to sign the memo for our records. Ted Hill." Does that refresh your recollection as to whether you ever did sign this memorandum?

A. No, it doesn't. I really can't remember whether I did sign it. I remember the process of going through it, Bill, but I just -- I can remember, for example, Twining called me in one day and he says, "Hey, you have seen some of the new input that we have gotten from other folks, including Goldberg, and he said, in light of that, if you were to reassess the performance now, would you come up with a different answer than you did with the information that was available to you at the time the PERB worked before?"

And I said, "Yeah, there is additional information, in fact, we didn't have in our possession at the time that we did it, and it probably would lower the overall rating and performance grade." Because Goldberg and company looked a lot more carefully and a lot more specifically at some areas than we had available to us in the normal process that preceded that.

Defendant's Supplemental Exhibit 65

**Department of Energy**
Washington, DC 20585

P103

September 20, 1989

MEMORANDUM FOR Bruce G. Twining
Manager
Albuquerque Operations Office

SUBJECT: Award Fee Determination for the Period October 1, 1988 through March 31, 1989, Rockwell International Corporation (RI).

Reference is made to your memorandum to me dated August 8, 1989, on this same subject. This Office has carefully reviewed all of the documentation provided by your Office regarding the Award Fee Determination for the period in question. The Office is essentially in concurrence with your recommendations, with an additional downward adjustment in the area of Environment, Safety and Health (ES&H).

The additional downward adjustment to ES&H reflects several concerns. Operations in Building 771 had to be stopped during October 1988 due to inadequate safety procedures and radiological safety margins in the building. Although RI pursued a very aggressive corrections effort after the fact, the mere existence of this situation demonstrated less than satisfactory attitudes, procedures, and awareness of safety issues on its part. Out of 230 safety concerns documented by external reviews and an internal RI review done prior to the award fee period, 91 were not addressed during the period. This further evidences a lack of priority attention paid to ES&H. During the period, 32 new safety concerns, including six classified as Type 2 (serious), were identified. Finally, the release of chromic acid from Building 444 into the plant's holding ponds could have resulted in a major environmental incident. An inoperable alarm system and deficient operator vigilance contributed significantly to the seriousness of this incident. Overall, there is strong evidence that throughout the award fee period there was a continuing pattern of lax attitudes, inadequate procedures, and lack of consideration of ES&H issues.

My Office has concluded that the "moderately good" numerical grade of 79 given to RI for its performance under the ES&H category be downgraded to a numerical grade of 65.25. Since ES&H carries an evaluation weight of 20 percent, the overall rating for the period drops from 87 to 84.25. This equates to an award fee of $2,716,307 for the Plant. We have not changed the award fee of $186,591 for PRMP/PROVE. Therefore, the total fee is $2,902,898. Admiral Watkins concurs in this recommendation.

99 120

In order to facilitate the dissemination of this information to RI and coordinate it with the letter from Admiral Watkins to Chairman Beall of today's date, we have attached a copy of your draft letter to RI which reflects our concerns in the ES&H area.

John L. Meinhardt
Acting Assistant Secretary
for Defense Programs

Attachment

Mr. Dominick J. Sanchini
President
Rocky Flats Plant
North American Space Operations
Rockwell International Corporation
P.O. Box 464
Golden, CO 80402

Dear Mr. Sanchini:

In accordance with Appendix D of Contract DE-AC04-76DP03533, I hereby determine that Rockwell International Corporation (Rockwell) has earned an award fee of $2,716,307 for Plant and $186,591 for PRMP/PROVE, for a total of $2,902,898. The enclosed Performance Evaluation Report for the period October October 1, 1988 through March 31, 1989 and a Memorandum from the Acting Assistant Secretary for Defense Programs, provide the basis for my award fee determination.

The award fee approved by the Department for payment to Rockwell was pursuant to an award fee plan previously developed to cover the period October 1, 1988 to March 31, 1989. This was prior to the institution by the Department of stronger and tougher award fee plans to reward improvements in environment, safety and health (ES&H) and substantially increase the proportion of the fee attributable to ES&H performance. Under the old contract provisions, however, the Department was constrained as to the weight that might be given to ES&H performance in setting the fee for the six month period covered.

In the old award fee plan, which includes this period, up to 20% of the total amount of fee paid could be attributable to performance in the ES&H area. By reducing the award fee for ES&H to "Unsatisfactory", the Department is indicating to Rockwell that your ES&H performance is unacceptable. Under the new plan, failure in any important area may result in the payment of no award fee.

As specified in the Contract, you may, within five working days after receipt of this letter, request an opportunity to present to me, or my designee, an analysis of your performance under the Contract. Otherwise, you may withdraw funds as a net award fee in the above amount from your Special Bank Account.

If you wish to meet with me, or my designee, please contact the Rocky Flats Area Office which will coordinate those arrangements for you.

Sincerely,

Bruce G. Twining
Manager

Enclosures